HINDS *v*. STATE OF INDIANA.

[No. 25,758.   Filed March 11, 1930.]

*Frank S. Houston,* for appellant.

*James M. Ogden,* Attorney-General, and *Merl M. Wall,* Deputy Attorney-General, for the State.

MARTIN, J.—Appellant was charged by affidavit with the felonious transportation of intoxicating liquor in an automobile in violation of Acts 1925, ch. 48, §7, §2720 Burns 1926. He was tried by the court, found guilty, fined $25, and sentenced to the Indiana State Prison for not less than one nor more than two years. The automobile in which he was transporting intoxicating liquor was ordered sold and the proceeds applied as provided by law.

The alleged error assigned is the overruling of appellant's motion for a new trial. This motion contains 19 reasons, but it is difficult to determine from the abstract propositions of law announced in appellant's "Points and Authorities" (without making any application thereof) what particular actions of the court appellant contends should entitle him to a new trial.

No error can be predicated on the action of the court in "refusing to permit the defendant to withdraw his plea of not guilty hereinbefore entered for the purpose of filing a written verified motion to suppress all evidence . . . discovered by the arresting officers," since there is nothing in the record to show that appellant offered any evidence in support of the motion to withdraw his plea in bar, or what the evidence was, if any was offered. See *Eshelman* v. *State* (1930), *ante* 475, 169 N. E. 861. Likewise, no error can be predicated on the action of the court in refusing "to permit the defendant to withdraw his plea of not guilty . . . for the purpose of filing a written verified motion to quash the search warrant herein issued and the return thereof and to suppress and reject all evidence," etc., for the reason just given. It is also noted that, upon the trial, no search was shown to have been made under a search warrant, and no search warrant, return thereto, or evidence secured thereunder, was offered or received in evidence.

As a reason to support his motion for a new trial, appellant contended that the court's "failing and refusing to hold or have a hearing on the issue joined by the filing of the motion to suppress the evidence unlawfully procured by the arresting officers and the answer in general denial filed thereto by the State of Indiana" was error. It does not appear from the record, however, that appellant introduced or sought to introduce any evidence either on the issue referred to or on the general issue on his plea of not guilty. The cause was tried by the court and the general finding of the court amounted to a finding against the appellant on all the issues.

The only question involved in this appeal is whether the search of appellant's car, which revealed 16 gallons

of whisky, was a lawful search. There was testimony that, at the time of the arrest, appellant had parked his car in violation of a city ordinance, but the State cannot and does not here contend that the search is valid by reason of being incidental to an arrest for violation of the ordinance, since an arresting officer testified: "Q. What did you arrest them for? A. Transportation of liquor. Q. There has been a good deal said about the way this car was parked; you didn't arrest this defendant for having his car parked in any particular manner, did you? A. I did not."

The following facts proved at the trial show that the officers who arrested appellant for transporting intoxicating liquor and searched his automobile had reasonable and probable cause for making the search. The officers who made the arrest testified that they had information on December 19, 1928, from the chief of police that someone in a car bearing a license number from the south part of the state would be through (Bloomington) with 16 gallons of liquor that afternoon (evening) about 6 o'clock; that he was a friend of the Medlock boys and that one of the Medlocks would meet him at the Walter Yarling garage where he would probably stop first to deliver two gallons of whisky; the officers were given orders by their superiors to go to Yarling's garage and wait for such a car; the chief of police testified that he got his information "off a piece of paper handed to me by the prosecuting attorney" and that "Mr. Goodman also told me about the same description I got from the prosecutor"; the prosecuting attorney testified that James Goodman had told him there would be a carload of liquor coming to Bloomington and that the information came from a man named Larkin, who was informed by Delmar and Virgil Medlock (to whom a part of the liquor was to be delivered); officer Myers, on the day in question, saw appellant driving an automobile; appellant

looked at him, "then looked in front real quick," and drove on; this officer reported to police headquarters what he had seen; officers Chambers and Robertson, who had been assigned to wait for the car, saw appellant sitting in his car in front of the Yarling garage about 7 p. m; the Medlock brothers were with him; the officers could see something in the car but could not tell exactly what it was; it looked like the back seat was full of something covered with a robe; the car was heavily loaded; it bore a license number from which the officers knew it came from the southern part of the state; these officers also called headquarters on the telephone; thereupon, they started back to where appellant's car was parked, but it pulled out and went up Third Street and parked near the Jordan sandwich shop at a 45-degree angle; when Officer Chambers approached appellant's car, he "saw a jug, partly uncovered in the car, and asked him if he was from Salem"; he told the occupants of the car to get out; the appellant got out on one side and the Medlock boys got out on the other; officer Robertson smelled the smell of intoxicating liquor as soon as the door was opened; the car contained 16 gallons of whisky.

The fact that the information received by the arresting officers upon which they began to look for appellant came to them through the medium of an informer who received his information from another, does not render such information incredible. The general rule against the admission of hearsay evidence has never been applied in inquiries into the existence of probable cause, *Hanger* v. *State* (1928), 199 Ind. 727, 160 N. E. 449; *Gwinn* v. *State* (1929), *ante* 420, 166 N. E. 769, and it manifestly would be impossible to enforce the law if it was necessary to provide the police officers who are sent out to make arrests with direct first-hand knowledge concerning all such matters.

Even anonymous information, although not alone

sufficient to constitute probable cause for a search, *United States* v. *Allen* (1926), 16 Fed. (2d) 320, ██ may be sufficient to set in motion an inquiry by the police officers, *Faut* v. *State* (1930), *ante* 322, 168 N. E. 124, and when, in addition to the information the officers have received, they, from the exercise of their own senses, have a belief reasonably arising out of the circumstances so known to them that an automobile or other vehicle contains that which by law is subject to seizure and destruction, probable cause then exists for the search without a warrant. *Faut* v. *State, supra; Hanger* v. *State, supra; Greer* v. *State* (1929), *ante* 386, 168 N. E. 581; *Morgan* v. *State* (1926), 197 Ind. 374, 151 N. E. 98; *Carroll* v. *United States* (1925), 267 U. S. 132, 45 Sup. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. The facts in this case clearly distinguish it from *Boyd* v. *State* (1926), 198 Ind. 55, 153 N. E. 278; *Eiler* v. *State* (1925), 196 Ind. 562, 149 N. E. 62; *Batts* v. *State* (1924), 194 Ind. 609, 144 N. E. 23, and *Morgan* v. *State, supra*, cited by appellant, where the court held that the officers had no reasonable and probable cause, but had merely suspicions on which to base their arrests.

Judgment affirmed.

Willoughby, J., concurs in the result.