MANSON ET AL. *v.* STATE OF INDIANA.

[No. 30,955. Filed October 2, 1967. Rehearing denied November 13, 1967.]

54

*John T. Grimes,* of Kokomo, and *Albert W. Ewbank,* of Indianapolis, for appellants.

*John J. Dillon,* Attorney General, and *Dennis J. Dewey,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellants were charged and found guilty of grand larceny and sentenced accordingly. They have appealed. The specifications are that the trial court erred in overruling the motion to suppress evidence obtained in the search of defendant Suber's automobile. The points presented in the briefs center mainly about this contention.

The evidence shows that officer Frank Rose of the Kokomo police department received a radio message over the police radio system that there were two colored subjects at Maplecrest shopping center and believed to be in Golightly's store, and they were seen in a blue 1960 Oldsmobile with Indian-

apolis prefix on the license number, and that they had put some stolen merchandise in the trunk. When officer Rose arrived, he went to Golightly's store at the shopping center and apparently found the two colored persons and followed them as they circled about the store, came out and went into another store known as Grants, made a small purchase and then went to the parking lot to the Oldsmobile described in the radio message. Mr. Suber, the appellant, started his car and the officer then arrested him "for shoplifting."

The officer says that he did not see the appellants do anything which would cause him to believe they were shoplifting, but he did have reason to believe because of the police call that there was stolen merchandise from the shopping center in the trunk of the car. He thereupon searched the car and in the rear trunk found a laundry bag with eight suits on clothes hangers and pants still on clothes hangers, rolled up; also a lady's coat that had a $100.00 price tag thereon. None of the merchandise in the back of the car was wrapped for purchase. The officer stated that appellant Suber said upon inquiry that the merchandise came from the Golightly store.

It is undisputed that a search of a car without warrant after a lawful arrest of the one in possession is not constitutionally interdicted. *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543; 25 I. L. E., *Search & Seizure,* § 22, p. 422.

Parenthetically, we may say appellant Manson has no standing to ask that the evidence obtained in the search of the car be suppressed, since she did not own it, and was not in possession or control of it. 25 I. L. E., *Search & Seizure,* § 5, p. 417.

It is argued that there was no probable cause for the police officer to make the arrest and subsequent search based upon the arrest, for the reason that the only information he had was based upon the police radio message to him from the dispatcher at police headquarters. In support of that it is further

urged that the radio broadcast made from police headquarters was based solely upon the hearsay of Mrs. Donna Umbarger, who was informed by unnamed persons that the appellants had taken the merchandise from Golightly's.

In determining the existence of probable cause for an arrest or search, must we go behind the information which a police officer receives, which appears to him at the time and under the circumstances to be reliable and from a reliable person, and nevertheless examine the basis of the information and its reliability?

It is the law that the fruits of the search cannot be used to support or justify an illegal search. *Idol* v. *State* (1953), 233 Ind. 307, 119 N. E. 2d 428.

Likewise, it seems to us that to justify or condemn the good faith search by a police officer upon hindsight information, of which he was not aware, would be illogical. Probable cause justifying an arrest without a warrant exists where facts and circumstances within the arresting officer's knowledge or of which he had reasonably trustworthy information, would lead a reasonably prudent person under the conditions at the time to believe a crime had been committed.

The right to arrest without warrant grew out of the need to protect the public safety by making prompt arrests. It had its origin in the ancient "Hue and Cry," upon which all hearing the alarm were bound to join in pursuit of a felon. The "Hue and Cry," if repeated by another, would be hearsay.

In this case the arresting officer acted upon an alarm over a police radio to him.

The law looks at the facts and circumstances as they were presented to the police officer who had to make a prompt decision. It is not necessary that the information be direct. Hearsay may at times be sufficient basis for probable cause for arrest or search.

"The fact that the information received by the arresting officers upon which they began to look for appellant came to them through the medium of an informer who ■ received his information from another, does not render such information incredible. The general rule against the admission of hearsay evidence has never been applied in inquiries into the existence of probable cause, *Hanger* v. *State* (1928), 199 Ind. 727, 160 N. E. 449; *Gwinn* v. *State* (1929), ante 420, 166 N. E. 769, and it manifestly would be impossible to enforce the law if it was necessary to provide the police officers who are sent out to make arrests with direct first-hand knowledge concerning all such matters." *Hinds* v. *State* (1930), 201 Ind. 563, 567, 170 N. E. 539, 540.

Obviously in the case before us the police officer, if he were to do his duty promptly, could not be delayed by checking the reliability of the information behind the call over the police radio. He must by necessity rely upon headquarters. A police system, to be effective, must be one in which the members work together, keeping each other informed and relying upon the actions and communications between members. With the use of automobiles in the commission of crime and escape, law enforcement officers are compelled to act with greater speed and less hesitancy than in years past. We find probable cause exists in this case for the arrest and search made by the officer. *Scaffido* v. *State* (1934), 215 Wis. 389, 254 N. W. 651; *United States* v. *Smith* (1966), 357 F. 2d 318; 6 C. J. S., *Arrest*, § 6, p. 600.

It is also urged that the evidence is not sufficient to sustain the finding of guilty. This contention centers mainly upon the argument that there is no evidence that these goods ■ came from the Golightly store at the particular place where the appellants were arrested, since Golightly's had three other stores at other places in Kokomo. However, in our opinion, there is sufficient evidence from which a jury or the court could find that this property came out of the Golightly store at the place where the appellants had parked their car and were found immediately following the radio call.

There can be no doubt that this was not purchased merchandise, but stolen merchandise. The tags were still attached, the suits were still on hangers, and the merchandise was not wrapped in shopping paper. The inventory showed the shortage of goods in this store. There was an empty space on the rack in the store where the suits of this particular size would have been located. There is no evidence that these appellants were in any of the other Golightly stores in other parts of the city. In our opinion, the circumstantial evidence here is sufficient to convince any reasonable person that this property came out of Golightly's store at the place where the appellants were arrested and were discovered with the goods.

Finally, appellant Suber, when he was arrested and asked where the merchandise came from, stated "all the merchandise came from Golightly's Store." From this statement one would conclude he referred to the store at the location where they were then talking. The evidence was sufficient in this case.

It is also contended, but we think not too seriously, that the police officer did not make a proper arrest since he stated he was arresting appellants "for shoplifting." It was pointed out that there was no statute making "shoplifting" under that name a crime at that time. To us, this is not important. The importance is they were arrested, and "shoplifting" in our opinion, comprehends larceny in lay language. Certainly larceny was a crime at the time.

The judgment is affirmed.

Hunter, C. J. and Lewis and Mote, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 229 N. E. 2d 801.