CAPPS v. STATE OF INDIANA.

[No. 30,869. Filed October 2, 1967.]

*John G. Bunner,* of Evansville, for appellant.

*John J. Dillon,* Attorney General, and *John F. Davis,* Deputy Attorney General, for appellee.

HUNTER, C. J.—This is an appeal growing out of the conviction of Robert Lee Capps in the Vanderburgh Circuit Court for robbery. The charge was brought by way of affidavit and the issues were drawn upon appellant's plea of not guilty. The cause was submitted for trial by jury, the Honorable William H. Miller, presiding.

The only assignment of error argued by the appellant in his brief is that the trial court erred in allowing the prosecution to introduce certain demonstrative evidence which was found in appellant's automobile following his arrest. Appellant contends that his arrest, which was accomplished without a warrant, was not based upon probable cause, and that any evidence seized in a search incidental to such arrest was inadmissible at his trial.

It is settled law that the search of an automobile is legal if made incidental to a lawful arrest. *Arthur v. State* (9149), 227 Ind. 493, 86 N. E. 2d 698; *Smith v. State* (1939), 215 Ind. 629, 21 N. E. 2d 709. It is likewise well established that where an arrest is made without probable cause, such unlawful arrest cannot be the foundation of a lawful search, and the fruits of a search incident to an unlawful arrest are not admissible at trial. *Enlow v. State* (1955), 234 Ind. 156, 86 N. E. 2d 250 and cases cited therein; *Henry v. United States* (1959), 361 U.S. 98; *Johnson v. United States* (1948), 333 U.S. 10.

The presumptions being in favor of the trial court, this Court will only consider the evidence most favorable to the State and all reasonable and logical inferences that may be adduced therefrom. *Beatty v. State* (1963), 244 Ind. 598, 194 N. E. 2d 727; *Epps v. State* (1963), 244 Ind. 515, 192 N .E. 2d 459; *Tait v. State* (1963), 244 Ind. 35, 188 N. E. 2d 537; *Myles v. State* (1955), 234 Ind. 129, 124

N. E. 2d 205. The evidence, viewed in that light, discloses the following facts:

The arresting officer, Lieutenant Danks, received a telephone call at police headquarters at approximately two o'clock on the morning in question from a person at a gasoline station which, the caller said, had been robbed. The caller, Rueben Webster, did not give his name but told Lt. Danks that the robber had worn a red and white checked shirt and light levies, had long, dark hair and had a space between his front teeth. Lt. Danks then left police headquarters, intending to go to the scene of the robbery. While enroute, he spotted an auto driven by a person wearing a red and white checked shirt. Danks altered his route and, along with another police unit which he called, stopped that automobile. After satisfying himself that the driver of this vehicle did not fully match the description of the robber, Danks was just pulling away when he received a radio message from the dispatcher that a blue and white 1954 or 1955 Chevrolet had been seen in the area of the crime, and then he received another message that the other police unit was following such vehicle driven by a subject wearing a red and white checked shirt. This auto was driven by defendant. Danks again altered his course to pursue defendant's auto and he reached defendant's auto as it was being halted by the other unit. The evidence shows that upon satisfying himself that defendant matched the description of the robber, but without first checking to see if defendant had a space between his teeth, Danks immediately placed defendant under arrest. Only then was a search of the auto carried out; and in the course thereof the evidence complained of was found and seized.

The description of the robber received by Danks over the telephone was given by Webster who consulted frequently with another person and who told Danks that he was calling from the scene of the robbery and had been present when it occurred. Although Danks did not ask Webster to give his name during the course of the conversation, and Webster did

not volunteer that information, it is clear that this call was not intended by Webster to be an anonymous tip. Rather, it appears that in the excitement of the moment the matter of the caller's name was simply overlooked. Danks testified that while he did not ask Webster to give his name, he, Danks, could tell that no attempt at anonymity was being made and that, in any event, a car was being sent to the scene immediately to verify. Webster later testified at the trial and admitted placing the telephone call. The resolution of this case turns upon whether Danks was entitled to rely upon the information he was given by Webster in determining that there was probable cause to believe defendant was guilty of the robbery at the time of the arrest. *U. S.* v. *Smith,* 308 F. 2d 657.

It has long been held in Indiana that a peace officer may arrest a suspect without a warrant when he has reasonable and probable cause for believing that a felony is being, or has been committed by the person arrested. *Johns* v. *State* (1956), 235 Ind. 464, 134 N. E. 2d 552; *Pearman* v. *State* (1954), 233 Ind. 111, 117 N. E. 2d 362; *Koscielski* v. *State* (1927), 199 Ind. 546, 158 N. E. 902. A police officer may base his belief that there is reasonable and probable cause for arresting a person on information received from another. *Long* v. *State* (1929), 89 Ind. App. 496, 167 N. E. 140.

A police officer who takes a telephone call giving him information relevant to the commission of a crime has both the authority and the duty to make a preliminary assessment of its reliability where immediate apprehension of the criminal is possible. This Court should not interfere with the discretionary decision of the police to treat such information as they had received in this case as a credible basis for probable cause in order to effect a swift arrest of the criminal.

Where law enforcement officers are attempting to apprehend a felon in the course of his flight from the scene of the crime,

it is often essential for them to rely, at least momentarily, upon uncorroborated and unverified information which they know will be subject to verification within a short time. If the police were required to verify all information they receive as to the commission of a crime before attempting to arrest a felon fleeing the scene of his crime, swift apprehension and arrest would be a practical impossibility in any case such as is presented here.

In the urgency of the moment, there appears to have been no reason for Lt. Danks to believe that the information he had received by phone was unreliable. That information along with the information as to a certain type of automobile which had been seen in the area, was subjected to the scrutiny and discretionary reliance of the officers involved, and this Court will not tamper with the decisions of those officers, absent a showing that, even under the urgent circumstances, their reliance was unreasonably misplaced. The Supreme Court of the United States has held that probably cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Beck* v. *Ohio* (1964), 379 U.S. 89; *Brinegar* v. *United States* (1949), 338 U.S. 160; *Henry* v. *United States* (1959), 361 U.S. 98. Evidence required to establish guilt is not necessary for probable cause to exist. *Henry* v. *United States, supra.*

It is our opinion that under the circumstances of this case, where emergency action was necessary on the part of the police in order to prevent the escape of a felon leaving the scene of his crime, the information possessed by the police was, at least for the moment, sufficiently reliable and trustworthy to justify men of reasonable caution in believing that a felony had been committed and that the defendant was the guilty party.

Assuming, without deciding, that defendant is correct in his contention that his arrest was completed at the moment the police stopped his car, interrupting and restricting his liberty of movement, *Henry* v. *United States, supra,* it nevertheless appears that at that moment they had reasonably reliable information that a felony had been committed, and in addition, even while driving, defendant could be seen to satisfy the following portions of the description given them:

(a) he was driving an auto of the same make, color and vintage as had been seen in the area,

(b) he wore a red and white checked shirt, and

(c) he had long, dark hair.

Furthermore, defendant was driving away from the scene of the robbery at approximately 2:00 A.M. It may be taken as elementary that normally there will not be an inordinate number of drivers on the streets in a given area at 2:00 in the morning who will satisfy a description so detailed as the one in question here. These circumstances must be taken to have added weight to the officers' belief that defendant was the robber.

For this Court to approve an arrest without a warrant made on the grounds the police had in this case is no sacrifice of "the right of the people to be secure in their persons, houses, papers and effects against unreasonable search, or seizure . . ." Ind. Const. Art. I, § 11. While it is true that Lt. Danks had stopped and investigated another driver prior to the defendant's arrest, the record shows that Danks quickly satisfied himself that this first suspect was not the robber and released him. Such an occurrence does not indicate, as appellant contends, that the officers were stopping cars indiscriminately without probable cause. On the contrary, it appears that they were merely investigating those possibilities which might lead to a rapid apprehension of the criminal in this case. The momentary inconvenience experienced by this first suspect, although regrettable, is a trivial matter when

compared to the public interest to be served by the speedy investigation of crime and the swift apprehension of criminals. Indeed, the possibility of such inconvenience is the price all citizens must pay for public security against the criminal element in face of this State's rising crime rate. Uniform Crime Reports for the United States, issued by Federal Bureau of Investigation, Department of Justice, 1966 Report.[1]

In our modern mass society, in which a felon can quickly escape to the safety of his residence or disappear into the crowd after breaking the law, fast action by law enforcement agencies which might result in apprehension of the criminal within minutes of the crime is of great importance. Where the police demonstrate an ability to accomplish an almost instantaneous arrest of the wrongdoer, as was done in this case, public confidence in law enforcement agencies grows, the public sense of security is strengthened, and potential felons may be moved to reconsider the magnitude of the risk they would take by laying their freedom on the line in committing a serious crime.

It would be neither wise nor judicious for this Court to penalize the police for their efficiency and alertness where their action has not resulted in the infringement of a citizen's substantial rights. For this Court to say that the information possessed by the arresting officers in this case was not sufficient or trustworthy enough to give them probable cause to arrest the defendant would be to take the handcuffs off the criminal and put them on the police.

We therefore find that the appellant's asserted and argued error is without merit and his conviction should be affirmed.

Judgment affirmed.

---

1. Table 3 on page 60 of *Uniform Crime Reports for the United States*, 1966 Report, shows an increase in Indiana of 9.3% in the number of robberies in 1966 over 1965 and an increase of 12.3% in the number of burglaries in 1966 over 1965. During the same period the population of Indiana increased by only 0.3%.

Arterburn, Lewis and Mote, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 229 N. E. 2d 794.