## L. V. WADE
v.
### WARDEN, MARYLAND PENITENTIARY.
#### Civ. A. No. 16989.

United States District Court
D. Maryland.

Jan. 22, 1968.

Daniel A. Bronstein (court-appointed), Baltimore, Md., for petitioner.

Francis B. Burch, Atty. Gen., of Maryland, and Alfred J. O'Ferrall, III, Asst. Atty. Gen., for defendant.

NORTHROP, District Judge.

On January 4, 1966, this court denied habeas corpus relief to petitioner, L. V. Wade, who was convicted of robbery and murder. Memorandum and Order No. 16989. However, on October 11, 1966, the United States Court of Appeals for the Fourth Circuit remanded the case because of the absence from the record of the transcript of the post conviction hearing and directed this court to examine that transcript. Memorandum Decision No. 10,522. After careful consideration of the post conviction transcript, this court again denied petitioner habeas corpus relief on all of the grounds which he raised except for one which was deferred pending an evidentiary hearing. This claim was that the searches of Wade's automobile and apartment by the police on the day of the robbery-murder were illegal because the consent given by his wife to make the searches, as evidenced by a written and signed permission slip, was impliedly coerced from her; and therefore, the evidence seized was improperly introduced at his trial. This court felt that a hearing was necessary since the state court record was devoid of testimony concerning the circumstances surrounding Mrs. Wade's consenting to the searches. Subsequently, Daniel A. Bronstein, Esquire, was appointed to represent the petitioner at the hearing which was held on December 1, 1967.

Prior to the hearing, Mr. Bronstein made a most diligent effort to locate Mrs. Dorothy Wade in Maryland, Chicago, Illinois, and Jackson, Mississippi, but to no avail. This court delayed proceedings in this case while these attempts to locate Mrs. Wade were being made. At the hearing, the petitioner testified only that on August 11, 1963, while driving his automobile, he was stopped by a motorcycle police officer, that he left this scene on foot leaving his wife and in-

fant child in the car, and that he went to Chicago. Petitioner was eventually captured by the F.B.I. almost four months later. Officer William Storck testified that in response to a radio communication he reported to the scene where the motorcycle officer explained that the driver had fled. Officer Storck further testified that he questioned Mrs. Wade at the scene and asked her to sign a permission slip to search the car and the apartment at 5005 Ready Avenue which she and the petitioner occupied. (The testimony of Lieutenant Glover at the state court trial was that Mrs. Wade signed the permission slip after being taken to the station house. Trial tr. p. 24.) While Storck testified that he did not recall what he said to Mrs. Wade before she signed the slip, on cross-examination he stated that he was certain that he did not make any threats or promises to Mrs. Wade to induce her to sign the slip because he has never made such to anyone. The automobile was taken to the Northeastern Police Station, and Officer Storck and another police officer went to the apartment at 5005 Ready Avenue. The trunk of the car contained some pieces of rope similar to that used to bind the hands of the murder victim and in the car itself were found some Nationwide money order checks, a type the victim sold. Evidence taken from the apartment included a bayonet which was later matched to the victim's fatal wounds by the Medical Examiner; a book of blank Nationwide money order checks and a Nationwide checkwriting machine later identified by the deceased's family as having been in his store; personal papers and the wallet of the deceased; a man's suit and staw hat; personal papers and photographs belonging to the petitioner; and a 32-calibre pistol with some ammunition.

■ Considering the petitioner's claim that there was coercion in obtaining his wife's consent to make the searches, this court finds that Mrs. Wade's consent was given freely and voluntarily. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); United States v. Vickers, 4 Cir., 387 F.2d 703; United States v. Thompson, 356 F.2d 216 (2d Cir. 1965); Burke v. United States, 328 F.2d 399 (1st Cir. 1964); Robinson v. United States, 325 F.2d 880 (5th Cir. 1964); United States v. Smith, 308 F.2d 657 (2d Cir. 1962); McDonald v. United States, 307 F.2d 272 (10th Cir. 1962).

Petitioner did not present any direct evidence at the evidentiary hearing to support his charge that coercion, actual or implied, was employed on Mrs. Wade to obtain her consent. The only inference which appeared slightly at the hearing and which the petitioner urged is that Mrs. Wade was herself arrested at 12:20 p. m. after her husband fled and did not sign the permission slip until 12:30 p. m. These times were recorded on the documents introduced. (Mrs. Wade was never prosecuted on any of the charges, all of which were connected to the robbery-murder.) The testimony of Officer Storck is to the effect that Mrs. Wade voluntarily consented to the searches.

> "It is well settled that the petitioner in a habeas corpus proceeding has the burden of proving by a preponderance of the evidence the alleged violations of his constitutional rights. Post v. Boles, 332 F.2d 738 (4th Cir. 1964); Stewart v. Smyth, 288 F.2d 362 (4th Cir. 1961); United States ex rel. Jackson v. Brady, 133 F.2d 476 (4th Cir. 1943)." Redd v. Peyton, 270 F.Supp. 757, 759 (W.D.Va.1967).

This court rejects the case of Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921) as controlling in our present situation to establish the alleged but unproven coercion. Furthermore, this court feels that petitioner has failed to develop any facts, except that Mrs. Wade may have been under arrest prior to giving her consent, to bring this case within the atmosphere of Weed v. United States, 340 F.2d 827 (10th Cir. 1965).

■ First, as for the consent to search the apartment, this court finds

that Mrs. Wade was in a position to give such consent since it was as much her apartment as her husband's; and therefore, the search of the apartment was legal and the evidence seized was properly admitted in court. See Maxwell v. Stephens, 348 F.2d 325, 336–337 (8th Cir. 1965); Burge v. United States, 342 F.2d 408 (9th Cir. 1965); Roberts v. United States, 332 F.2d 892 (8th Cir. 1964), cert. denied 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965); Stein v. United States, 166 F.2d 851 (9th Cir. 1948); United States v. Retolaza, Memorandum and Order No. 27305 (D.Md. 1967). Cf., Rees v. Peyton, 341 F.2d 859 (4th Cir. 1965), referring with approval to United States v. Rees, 193 F.Supp. 849 (D.Md.1961); Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (D.C.Cir. 1959); Woodard v. United States, 254 F.2d 312 (D.C.Cir. 1958); Dorsey and Gladden v. State, 2 Md.App. 40, 232 A.2d 900 (1967).

■ Second, this court considers the search of the automobile, a 1950 maroon-colored Buick with Illinois license plates. When Wade fled the scene, the police were reasonable in assuming that he was leaving the car in the possession of his wife or that he was abandoning the car (and his wife and child). There was no testimony whether Mrs. Wade had a driver's license or knew how to drive. It is notable that the police knew, prior to stopping Wade, that the thirteen-year-old eyewitness to the recently committed robbery and brutal and fatal stabbing had identified the car in which the murderer fled as a maroon-colored car with a certain Illinois license plate number and a resident of the area had seen a maroon Buick of approximately 1953 vintage around the time of the murder.

■ Assuming · that Wade left his wife in possession of the car, this court finds that she was in a position to consent to the search of the car. This case is distinguishable from the case of Reeves v. Warden, Maryland Penitentiary, 346 F.2d 915, 924–926 (4th Cir. 1965) where the court held that only the petitioner could give constitutionally

effective permission to search, without a warrant, the room and the bureau set aside exclusively for his regular use. This court feels that it was reasonable for the police to assume that even though Wade was the titled owner of the automobile that he shared possession of it with his wife.

In a case not unlike ours, the United States Court of Appeals for the Fourth Circuit held that the bailee of an automobile could consent to its search and found that the search was legal and reasonable and the evidence seized was admissible against the bailor. United States v. Eldridge, 302 F.2d 463 (4th Cir. 1962). This case was followed in Hamilton v. State of North Carolina, 260 F.Supp. 632, 635 (E.D.N.C.1966) where the operator of the car consented to its search after taking the car to the police station. By leaving his wife in possession of the car, Wade, in effect, designated her as the bailee of his car; and thus, she could properly consent to its search.

This court does not feel that Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) is controlling in our case but is clearly distinguishable.

"In Preston the defendants were arrested for vagrancy while sitting in a parked automobile. The car, which was not searched at the time of the arrest, was taken by the police to a garage at about the same time that the defendants were taken to police headquarters. At a later time the police searched the car and discovered various disguises and other paraphernalia used in a prosecution for conspiracy to commit bank robbery. The search was held to have been unreasonable and the admission of the evidence obtained thereby a violation of the defendant's Fourth Amendment rights." Morris v. Boles, 386 F.2d 395, 399 (4th Cir. 1967).

The Supreme Court in distinguishing Preston from the facts in its recent decision of Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, rehearing denied 386 U.S. 988, 87

S.Ct. 1283, 18 L.Ed.2d 243 (1967), where the car was seized under state law to be held until the conclusion of forfeiture proceedings, stated:

"While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' ibid., the reason for and nature of the custody may constitutionally justify the search. Preston was arrested for vagrancy. The arresting officers took his car to the station simply because they did not wish to leave it on the street. It was not suggested that they did this other than for Preston's convenience or that they had the right to impound the car and keep it from Preston or whomever he might send for it. The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car. This is not *Preston* nor is it controlled by it." 386 U.S. at 61, 87 S.Ct. at 790.

In *Cooper* the Court found the search to be reasonable regardless of the fact that the police could have obtained a search warrant. For other decisions distinguishing Preston from their facts, see Morris v. Boles, supra; Draper v. State of Maryland, 265 F.Supp. 718 (D.Md. 1967); United States ex rel. Murphy v. State of New Jersey, 260 F.Supp. 987, 992 (D.N.J.1965), aff'd 369 F.2d 698 (3d Cir. 1966), cert. denied 386 U.S. 965, 87 S.Ct. 1044, 18 L.Ed.2d 114 (1967).

In our case a brutal robbery-murder had recently been committed, and the murderer was seen fleeing the scene in a car similar to the petitioner's. Later that same day, upon being stopped by a motorcycle policeman while driving his car, Wade fled the scene. In *Preston* the defendants were under arrest and in custody at the police station at the time of the search. The automobile of the defendants had no connection to their being arrested for vagrancy. In this case the petitioner's car fit the description of the murderer's vehicle and thus was closely related to the crime. Another significant distinguishment is that Mrs. Wade, who was under arrest in contrast to Mr. Wade, freely and voluntarily consented to the search of the car which her husband left in her possession. Furthermore it became imperative that the police determine as quickly as possible whether Mr. Wade was to be considered a prime suspect in this robbery-murder in order to decide whether to alert other state and federal authorities to be on the lookout for him.* This court concludes that because of Mrs. Wade's consent to search the car in her possession the search was reasonable and legal.

Finally, even if we assume that Mrs. Wade was not in a position to consent

---

* It may be argued that if time were of the essence then the car should have been searched while on the street rather than being taken to the station house; and further argued, that since it was taken to the station house a search warrant should have been obtained. However, in United States v. Rabinowitz, 339 U.S. 56, 65, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950), the Court said:

"A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. *Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.*" [Emphasis added.]

to the search of the car, as the petitioner urges, this court feels that Wade abandoned the 1950 Buick when he fled. Petitioner's intention to abandon the car was later pragmatically evidenced by the fact that he never returned and never attempted to regain possession of the car. Wade testified that he went to Chicago, and it seems that he remained there for nearly four months. Several cases have upheld searches and seizures where the defendant abandoned his room or the seized evidence, particularly where the seized evidence was an instrumentality of the crime. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L. Ed.2d 668 (1960); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898 (1924); Feguer v. United States, 302 F.2d 214, 248–250 (8th Cir. 1962); Newingham v. United States, 4 F.2d 490 (3d Cir. 1925); Henderson v. Warden, Maryland Penitentiary, 248 F. Supp. 917 (D.Md.1965); Anglin v. State of Maryland, Memorandum and Order No. 17999 (D.Md.1967); Buettner v. State, 233 Md. 235, 196 A.2d 465 (1964). Several state courts have upheld searches where they found the car to have been abandoned under facts similar to our case. People v. Smith, 63 Cal.2d 779, 48 Cal.Rptr. 382, 409 P.2d 222, 236–237 (1966); Hawley v. Commonwealth, 206 Va. 479, 144 S.E.2d 314 (1965); People v. Harper, 26 Ill.2d 85, 185 N.E.2d 865 (1962). Under all of the circumstances in this case, this court feels that the police acted reasonably when they impounded the abandoned car and took an inventory of its contents.

The court expresses its appreciation to Daniel A. Bronstein, court-appointed counsel for petitioner, for his very able and conscientious presentation of Wade's case.

For the reasons stated above, it is this 22nd day of January, 1968, ordered:

1. That this petition for a writ of habeas corpus be, and the same hereby is, denied;

2. That leave to file said petition in forma pauperis be granted; and

3. That the clerk of the court mail copies of this memorandum and order to the petitioner, to Daniel Bronstein, Esquire, and to the Attorney General of Maryland.