## GREER *v.* STATE OF INDIANA.

[No. 1068S169. Filed March 16, 1970. Rehearing denied April 29, 1970.]

610

*Palmer K. Ward,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Kenneth M. Mc-Dermott,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellants were charged by affidavit with the crimes of robbery and inflicting physical injuries in the commission of a robbery. A trial by jury resulted in appellants being found guilty as charged.

We are presented with two issues, both of which involve the admissability of certain evidence. In particular it is urged that the State Exhibits 1, 2, 3, 4, 5, and 6, being two ski masks and various items of clothing, were the product of an illegal search of the home of the appellant James Greer. The State's Exhibits 7 and 16 were two jackets said to be the product of an illegal search of an automobile parked in front of appellant James Greer's home. The factual situation with reference to this robbery is as follows:

At approximately 11:00 p.m., on the evening of January 22, 1968, two men wearing black ski masks entered the Pla-Mor Tavern which is located in Indianapolis. They were both brandishing sawed-off shotguns. One of the robbers, after striking a waitress on the head, ordered everyone in the tavern to lie on the floor. His counterpart then proceeded to remove the money from the cash register behind the bar. While these events were taking place, Officers Carter and Dunkin of the Indianapolis Police Department pulled into the tavern's parking lot, unaware of the fact that a robbery was taking place. Officer Dunkin entered the tavern by way of the back door for the purpose of picking up his car keys. Dunkin was accosted by the robbers and relieved of his revolver. Officer Carter who had remained in the car found himself facing a double barreled sawed-off shotgun, which one of the robbers had stuck through the car window. Upon being ordered out of the car, Carter attempted to dive from the car and was shot in the back and fell to the ground.

Officer Dunkin, upon seeing his partner wounded, attempted to flee from the tavern and he too was shot, being struck in

the foot. The robbers then fled. Officer Carter managed to reach his car radio and put in a signal for help. Officers Sandler and Viles of the Indianapolis Police Department reached the tavern at approximately 11:30 p.m. in response to the signal for assistance; they remained at the scene assisting the wounded and searching for evidence until about 1:30 a.m. Shortly after 1:00 a.m. on January 23, 1968, a man driving his automobile along River Drive struck a man carrying a sawed-off shotgun and a black ski mask who had darted into the street. The impact caused the shotgun to discharge. The driver reported the incident to the police and identified the accident victim as the appellant James Greer. This identification was based upon the driver having seen both of the appellants on prior occasions at the Pla-Mor Tavern. The police were shown the direction James Greer had taken through a vacant lot after being struck by the car.

At about 1:30 a.m. Officers Sandler and Viles left the tavern and joined in the search. Viles spotted the appellants, both of whom were armed with shotguns. Officers Viles and Sandler gave chase on foot. Appellant James Greer opened fire on the officers and in the ensuing exchange of gunfire James Greer was wounded in the hand. He was finally apprehended on the front porch of a house; it was then approximately 1:45 a.m. Robert Greer escaped capture at the time. This occurred within a block or two of the homes of both Robert Greer and James Greer. The search for Robert Greer intensified in that area. The search for the fleeing suspects brought the officers to the home of James Greer. At this point James Greer's wife, who had been at her brother's house at 1041 River Avenue, arrived at her own home at 1020 River Avenue. Officer Pervitas told her he was looking for the appellant Robert Greer, the brother of her husband, and asked if the police could enter the house of James Greer to look for Robert Greer. She was advised that she did not have to let the police enter. At this point the evidence is conflicting. The officer testified that they were given permission to enter

and James Greer's wife unlocked the door. Mrs. James Greer denied that she ever consented to the entry of the police. Officer Pervitas and Lieutenant Straton entered the residence at approximately 2:00 a.m. in search of Robert Greer. Upon entering the officers observed ski masks on the floor and in the door way of a room adjacent to the living room. Another mask and other articles of clothing were found on the floor. The officers had earlier been advised as to the clothing and the mask worn by the robbers. These items became State's Exhibits 1, 2, 3, 4, 5, and 6. From an automobile parked in front of the residence two jackets were taken. These items became State's Exhibits 7 and 16. Appellant Robert Greer was not found in the house. He was later apprehended at 1041 River Avenue, after being observed in the house at that address. It is urged that Mrs. James Greer had no authority to grant the police officers the right to search the residence of herself and her husband and further that James Greer had been arrested prior to the entry of the police. There is a conflict of evidence in that respect, however. We thus have issues of fact to be determined by the trier with reference to the evidence. These factual issues were determined against the appellants. Credibility of the witnesses are here involved as well as other surrounding circumstances and where the evidence is in conflict we will accept the finding below if it is supported by the evidence. And we find that it is.

We point out also that Robert Greer had no right to make any objection to a search of another person's property, namely that of his brother's. *Minton* v. *State* (1966), 247 Ind. 307, 214 N. E. 2d 380, reaffirmed in *Leonard* v. *State* (1968), 249 Ind. 369, 232 N. E. 2d 882. In the latter case this court said, "But even if the search were improper the appellant can not raise any question as to the legality of the search of property belonging to another person."

The appellant James Greer further argues that assuming his wife attempted to grant consent to the search of his home

she had no such authority so far as he was concerned. We believe the wife, as a person in joint possession, could lawfully consent to the entry of the police officers in her own right. In holding that under the particular circumstances herein involved the wife could effectively consent to the entry of the police, we have ample support. *People* v. *Dominguez* (1956), 144 Cal. App. 2d 63, 300 P. 2d 194; *People* v. *Carter* (1957), 48 Cal. 2d 737, 312 P. 2d 665; *People* v. *Haskell* (1968), 41 Ill. 2d 25, 241 N. E. 2d 430; *Bellam* v. *State* (1964), 233 Md. 368, 196 A. 2d 891; *State* v. *Kennedy* (1969), 80 N. M. 152, 452 P. 2d 486; *Hook* v. *State* (1958), 181 N. Y. S. 2d 621; *Com. ex rel. Cabey* v. *Rundle* (1968), 432 Pa. 466, 248 A. 2d 197; *Burge* v. *State* (Tex. Cr. App. 1969), 443 S. W. 2d 720; *Padilla* v. *State* (1954), 160 Tex. Cr. 618, 273 S. W. 2d 889; *Wade* v. *Warden, Maryland Penitentiary* (D. Md. 1968), 278 F. Supp. 904; *United States v. Eldridge* (4th Cir. 1962), 302 F. 2d 463; *United States* v. *Sferas* (7th Cir. 1954), 210 F. 2d 69, cert. denied 347 U. S. 935, 74 S. Ct. 630, 98 L. Ed. 1086; *Roberts* v. *United States* (8th Cir. 1964), 332 F. 2d 892; *Maxwell* v. *Stephens* (8th Cir. 1965), 348 F. 2d 325; *Burge* v. *United States* (9th Cir. 1965), 342 F. 2d 408; *Nelson* v. *People of State of California* (9th Cir. 1965), 346 F. 2d 73. However, we are not disposed to uphold the ruling of the trial court upon the basis of consent alone. There seems to us to be other grounds for permitting the testimony and the admission of the exhibits in this case.

It appears to us that if there ever was an occasion in which the old common law principle of hue and cry and the right to pursue fleeing suspects or criminals is applicable this would be one of those cases.

The police at this time had more than reasonable belief that a felony had been committed, in fact, that multiple felony had been perpetrated. Two policemen had been wounded at the scene of the robbery and subsequent gun battles had taken place. Descriptions of the suspects were given within a few minutes after the robbery. The police were informed of an

automobile accident a short distance away in which James Greer was knocked down and a sawed-off shotgun discharged which he was carrying. He was carrying a ski mask. James Greer was recognized by the driver of the car. The police were, within minutes, upon the scene where this occurred and started in pursuit. Shortly thereafter, they caught up with the appellants and engaged in a gun battle with them. James Greer was injured. He was thereafter apprehended but, Robert Greer escaped. The police continued the pursuit. The scene of this gun battle was within a few blocks of the homes of Robert Greer and James Greer. Common sense would dictate that the police should go to the homes of these two fleeing suspects in their attempt to find them.

In *Capps* v. *State* (1967) 248 Ind. 472, 229 N. E. 2d 794, Judge Hunter speaking for this court stated:

"In our modern mass society, in which a felon can quickly escape to the safety of his residence or disappear into the crowd after breaking the law, fast action by law enforcement agencies which might result in apprehension of the criminal within minutes of the crime is of great importance. Where the police demonstrate an ability to accomplish an almost instantaneous arrest of the wrong-doers, as was done in this case, public confidence in law enforcement agencies grows, the public sense of security is strengthened, and potential felons may be moved to reconsider the magnitude of the risk they would take by laying their freedom on the line in committing a serious crime."

Under the circumstances here it would not be logical or rational for the law to say that the police must stop their pursuit at the point where they reached the home of James Greer in the search of Robert Greer and go back and have a hearing in an attempt to obtain a search warrant before they entered the home. The law is not that cumbersome. There is ample support for the action of the police, in this case. *Wilson* v. *State* (1966), 247 Ind. 454, 217 N. E. 2d 147, *Manson et al.* v. *State* (1967), 249 Ind. 53, 229

N. E. 2d 801. The United States Supreme Court has said in this connection:

> "The Fourth Amendment does not require police
> ■ officers to delay in the course of investigation if to do
> so would gravely endanger their lives and the lives
> of others."

*Warden Md. Penitentiary* v. *Hayden* (1967), 387 U. S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642. We find no error committed by the trial court in its ruling in this connection.

Appellants finally argue that the introduction of the exhibits 7 and 16, which were found upon the search of an automobile parked in front of the James Greer residence, were ■ erroneously admitted. These exhibits were two jackets found in open observation in the car. The exhibits were in plain view. The transcript shows no objection to these exhibits when they were offered as evidence upon the ground of a violation of the right against search and seizure. The appellants have failed to show any grounds for error on part of the trial court in this ruling in reference to exhibits 7 and 16.

The judgment of the trial court is affirmed.

Hunter, C.J., and Givan, J., concur; DeBruler, J., concurs in result with opinion in which Jackson, J., concurs.

CONCURRING IN RESULT

DEBRULER, J.—I concur in the result of this opinion on the ground that the wife of James Greer gave her consent to the police officers to enter the house and when they did so they saw the items seized in plain view on the floor.

However, I dissent from the holding that Robert Greer had no standing to object to the search of James Greer's property. I believe Robert Greer's standing is clearly guaranteed by *Jones* v. *U. S.* (1960), 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697. In that case the United States Supreme Court held that in the case of a non-possessory offense, a defendant has standing to object to a search if the items seized are his *or* if

he was legitimately on the premises searched. In this case Robert admitted he owned some of the objects seized and it is clear that he was legitimately on the premises several hours before the search. The court explicitly eliminated the idea that a defendant has no standing to object to the search of another's property. This issue was correctly and thoroughly discussed in the dissenting opinion of *Hadley* v. *State* (1968), 251 Ind. 24, 238 N. E. 2d 888, reh. den., 251 Ind. 24, 242 N. E. 2d 357, and I need add nothing to that discussion.

Neither do the two Indiana cases cited support the majority opinion. In *Leonard* v. *State* (1968), 249 Ind. 361, 232 N. E. 2d 882, the issue was whether the defendant had standing to object to the admission of bank records of his accounts subpoenaed from the banks. Obviously, the items seized were not defendant's and he had no expectation of privacy with respect to them.

*Minton* v. *State* (1966), 247 Ind. 307, 214 N. E. 2d 380, was clearly in error when it was handed down due to the decision of *Jones* v. *U. S., supra.* In *Minton* the defendant was charged with possession of narcotics and the court held that he had no standing to object to the search of the car conducted there. *Jones* v. *U. S., supra,* explicitly holds that in the case of a possessory offense, the allegation of possession in the indictment is sufficient to confer standing on the defendant to raise the issue of the legality of the search.

In addition, I dissent from the majority view that this is a "hot pursuit" case. Under either the majority or dissenting opinion in *Hadley* v. *State, supra,* the police are required as a bare minimum, to have probable cause to believe a felony has been committed and probable cause to believe that the felon is in the house sought to be searched. There was no way the police could have had probable cause to believe that Robert Greer was in the house at 1020 River Avenue. He did not live there. The mere fact that his brother James did live there and they were both suspects in the robbery does not permit an

inference that Robert was in James' house. When Robert and James were seen at 1:30 A.M. by Officers Sandler and Viles at 1003 Marion, they were about 1½ blocks north of James' house at 1020 River Avenue. Robert and James fled to 922 Marion where a gunfight ensued. This was north and away from James Greer's house. James was captured moments later at 845 Birch which is still further north. Obviously, their line of flight was away from James Greer's house.

The majority cites four cases in support of their position but none of the cases does in fact support it.

*Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794, and *Manson* v. *State* (1967), 249 Ind. 53, 229 N. E. 2d 801, are not hot pursuit cases at all. They merely involve the issue of whether there was probable cause to arrest the driver of a car.

*Wilson* v. *State* (1966), 247 Ind. 454, 217 N. E. 2d 147, was clearly not a hot pursuit case, either. In that case a police officer, without a warrant, entered the decedent's apartment, with consent of "someone in charge," to investigate the killing which had been reported to the police. The killer was not thought to be on the premises and the police officer obviously was not pursuing a felon.

*Warden* v. *Hayden* (1967), 387 U. S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782, was a hot pursuit case, but there the police arrived at the house to be searched within five minutes after two cab drivers saw the suspect actually go into the house. That is the very element missing in our case, namely, any evidence that Robert Greer was in James Greer's house.

The majority cites no case where "hot pursuit" rationale was accepted where the necessary condition of probable cause to believe that the felon was in the house was not met.

NOTE.—Reported in 255 N. E. 2d 919.