WADLINGTON *v.* STATE OF INDIANA.

[No. 669S143. Filed May 7, 1970. No petition for rehearing filed.]

*Don R. Money*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, and *Kenneth M. McDermott*, Deputy Attorney General, for appellee.

HUNTER, C.J.—This is an appeal brought by appellant, Clinton Wadlington, from a conviction in two counts in the Marion Criminal Court, Division Two, of the crimes of kidnapping, and assault and battery with intent to commit a felony. Trial was had by jury and upon the rendition of a verdict of guilty, judgment was entered thereon. Appellant was sentenced to life imprisonment on count one, and to im-

prisonment for not less than one [1] nor more than ten [10] years on count two.

Appellant filed a timely motion for a new trial in which he alleges as error that the verdict of the jury is not sustained by sufficient evidence and is therefore contrary to law. The trial court overruled the motion for new trial and appellant is assigning as error in this appeal the overruling of said motion. The single question presented by appellant's brief in this court is whether or not there is sufficient evidence to sustain the verdict of the jury and the judgment thereon.

In looking at the sufficiency of the evidence, this court on appeal will examine only that evidence and the reasonable inferences deducible therefrom which are most favorable to the state. *Carter* v. *State* (1968), 250 Ind. 50, 234 N. E. 2d 850; *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794; *Beatty* v. *State* (1963), 244 Ind. 598, 194 N. E. 2d 727. We will not weigh the evidence, nor determine the credibility of witnesses. *Leaver* v. *State* (1968), 250 Ind. 523, 237 N. E. 2d 368; *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809.

Furthermore, a verdict of guilty in a criminal trial will be sustained on appeal, if each element of the crime or crimes charged is established by substantial evidence of probative value, so as to convince the trier of fact of its existence beyond a reasonable doubt. *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874; *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

In the case at bar, appellant was found guilty of the crime of kidnapping, which crime is found at Ind. Ann. Stat. § 10-2901 (1956 Repl.) as follows:

"Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United

States, is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life."

and the crime of assault and battery with intent to commit a felony, to-wit: rape, found at Ind. Ann. Stat. § 10-401 (1969 Supp.) as follows:

"Whoever perpetrates an assault or assault and battery upon any human being with intent to commit any felony other than a felonious homicide, shall, on conviction, be imprisoned in the state prison for not less than one (1) nor more than ten (10) years."

Appellant argues that the evidence going to the proof of the commission of these two crimes is insufficient in the following particulars:

(1) The State failed to identify the appellant as the perpetrator of these crimes.
(2) The State failed to prove criminal intent.
(3) The State failed to place the appellant at the scene of the crimes.
(4) The State failed to prove the appellant guilty beyond a reasonable doubt.

Due to the nature of the facts in this case, we will refrain from reciting the evidence except insofar as is absolutely necessary to substantiate our holding. The record reveals the following: On the evening of August 4, 1967, Mrs. Donna Barton, the State's prosecuting witness and her husband, Stanley L. Barton, went out to dinner at the Embers, a nightclub in downtown Indianapolis. After having dinner and watching the accompanying floor show the witness and her husband left the Embers at approximately 11:00 or 11:30 P.M. to drive home.

While proceeding home by way of Massachusetts Avenue, Mrs. Barton testified that she and her husband got into a "silly" argument purportedly over the manner in which Mr. Barton was driving the car. She testified that because of this argument she got out of the car along Massachusetts Avenue

and proceeded to walk home while Mr. Barton followed alongside, trying to talk her into getting back into the car. After several unsuccessful attempts to get her to return to the car, and because he was blocking traffic behind him on Massachusetts Avenue, Mr. Barton decided to proceed home leaving his wife to find her own way, presumably by taxi cab.

Mrs. Barton continued walking up Massachusetts Avenue toward her home. As she approached the vicinity of 21st Street, she heard footsteps behind her and when she turned around to see who it was, she observed two men "running after her." She tried but was unable to run from her assailants. As she attempted to do so, they grabbed her and threw her down into some bushes along the road. Mrs. Barton testified that the men then threw something resembling a sweater over her head, picked her up and carried her across some railroad tracks to another area nearby where several other men were waiting. At that point her assailants proceeded to remove her wedding rings and watch and then started to undress her. One of the men started to have sexual relations with her when he was interrupted by some sort of disturbance which caused all of the men to cease their activities momentarily.

At this point Mrs. Barton testified that the men picked her up and carried her further down the railroad tracks to a nearby location where a car was waiting. She was put in the trunk of the car accompanied by one of the assailants and was driven by the men to an abandoned house at 1922 Arrow Street, Indianapolis. Upon their arrival at that address she was carried into the house, placed on a mattress on the floor and repeatedly raped throughout the rest of the night. At 5:30 the next morning after her attackers had departed she left the house and went to a nearby residence to call her husband for help.

Also testifying for the state was Robert Frye who was with appellant and two other companions, riding in a car

along Massachusetts Avenue at approximately 11 P.M. on the evening in question. Witness Frye identified the appellant Wadlington as one of the men who picked up the victim, at 21st and Massachusetts after she had been grabbed by a companion, knocked down, and carried over the railroad tracks to the remote area described above. The witness testified further that the appellant put the woman in the trunk of the car in which they had been riding, and that all four men on *appellant's suggestion* drove to a vacant house at 1922 Arrow Street. The house belonged to the witness Frye's aunt. When they arrived there, appellant and one of the other men opened the trunk of the car and carried the victim into the house. Witness Frye testified that the appellant "got on the mattress with the victim and raped her, the same as the other boys did."

The victim, Mrs. Barton, specifically identified the appellant in the four following instances:

(1) She identified him at the railroad tracks while she was lying on her back and the men were going through her purse and removing her rings;

(2) She identified him as one of the two men who carried her from that location to the trunk of the car;

(3) She identified him as one of the men who was present in the room at the house on Arrow Street; and

(4) She identified him "with absolute certainty" as one of the men that raped her at that house.

In addition to the above described testimony, there was corroborating evidence from the police who found articles of Mrs. Barton's clothing and jewelry at the vacant house on Arrow Street as well as at the location near the railroad tracks where the initial events took place. There was also corroborating medical testimony by the physician who examined the victim as to the occurrence of the rape and as to numerous other physical injuries sustained by her.

Based on the above-described evidence, we believe that the state has produced sufficient substantial evidence of probative

value to convince a jury of appellant's guilt beyond a reasonable doubt and that the judgment thereon is correct. There is sufficient evidence from which the jury could have found (1) that the prosecutrix correctly identified appellant as the person who committed the crimes upon her person as charged; (2) that appellant did so with criminal intent; and (3) that both of these were proved beyond a reasonable doubt.

Appellant attempts throughout his brief before this court to discredit the incriminating testimony of his companion Robert Frye, labelling him both a participant in the crimes charged, as well as a "traitor." However in spite of appellant's displeasure with his friend's decision to testify for the state, it is clear that Indiana law specifically provides that accomplices when they consent to testify are competent witnesses. Ind. Ann. Stat. § 9-1603 (1956 Repl.) The credibility and weight to be given to Mr. Frye's testimony is for the jury to determine and not this court.

Appellant further argues that "he is paying an extremely high penalty for his alleged participation in the crimes charged" where the prosecuting witness has placed herself in such a position, in which no reasonable person would place himself. While this court might agree with appellant that for a woman to get out of a car late at night and to walk unaccompanied along a city street might not be a wise course of action, such conduct on the part of the victim is by no means a defense to the commission of the crimes charged.

In view of the above, we hold as a matter of law that the verdict of the jury and the judgment thereon are correct and that the judgment therefore should be affirmed.

Judgment affirmed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 257 N. E. 2d 822.