FRYE v. STATE OF INDIANA.

[No. 24,655. Filed May 11, 1926.]

1. CRIMINAL LAW.—*State's answer to accused's motion to suppress evidence held to aver facts sufficient to warrant officers in making arrest and seizing implements and appliances in use in committing a felony.*—In a prosecution for having possession of a still for the manufacture of intoxicating liquor and using it in such manufacture, a pleading filed by the state as an answer to a motion by the accused to suppress evidence obtained by an alleged unlawful search and seizure, which alleged that said search and seizure were made by members of a horse-thief detective association acting as constables, on reliable information that accused was then engaged in the act of making intoxicating liquor in violation of Acts 1923 p. 107, which constituted a felony, averred facts sufficient to warrant such officers in making the arrest and seizing the implements in use in committing the felony. p. 617.

2. SEARCHES AND SEIZURES.—*Constitutional right to be secure against unreasonable search and seizure is personal right and can only be asserted by one whose right has been invaded.*—The constitutional right to be secure against unreasonable search and seizure, guaranteed by Art. 1, §11, of the State Constitution, §63 Burns 1926, §56 Burns 1914, is a personal right and cannot be asserted by others than the person whose right is invaded. p. 620.

3. CRIMINAL LAW.—*Seizure of intoxicating liquor and distilling apparatus with its contents, in which defendant had no interest, by officers in making raid on a still, located on a farm of which defendant had no possession or control, did not violate his constitutional rights, and such articles were admissible in evidence against him on a charge of having possession of the still for the manufacture of intoxicating liquor, where he was present at the time of the raid, though facts warranting search and seizure without warrant were not shown.*—The seizure of intoxicating liquor and distilling apparatus, with its contents, in which the defendant had no interest, by officers in making a raid on a still located on a farm of which defendant had no

possession or control, did not violate defendant's constitutional rights, and such articles were admissible in evidence against him, on a charge of having possession of the still for the manufacture of intoxicating liquors, where he was present at the time of the raid, though facts warranting a search and seizure without a search warrant were not shown.   p. 621.

4. INTOXICATING LIQUORS.—*Mere presence of an accused where a still was in operation not sufficient evidence to sustain conviction for possessing and using a still for manufacture of liquor.*—The mere presence of an accused at the place where a still was in 'operation in the manufacture of intoxicating liquor is not sufficient evidence to justify conviction for possessing and using a still for the manufacture of intoxicating liquor, especially where a reasonable explanation of his presence was made which was consistent with no purpose of wrongdoing.   p. 621.

From Daviess Circuit Court; *Milton S. Hastings,* Judge.

Edward Frye was convicted of unlawful possession and use of a still and distilling apparatus for the manufacture of intoxicating liquor, and he appeals. *Reversed.*

*Alvin Padgett,* for appellant.

*U. S. Lesh,* Attorney-General and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant and another, in the court below, were charged by affidavit with the unlawful possession, control and use of a still and distilling apparatus for the manufacture of intoxicating liquor, in violation of §1, Acts 1923 p. 107.

Appellant was separately tried by a jury, convicted, and judgment thereafter rendered on the verdict.   His verified motion to suppress certain alleged evidence and his demurrer to appellee's answer thereto for want of facts were each overruled.   The ruling on the demurrer to appellee's answer, and the overruling of appellant's motion for a new trial are each assigned as error.

There is no attempt to question the ruling on the motion to suppress. However, each item of alleged evidence sought to be suppressed by appellant's motion was admitted over his objection and is presented for review by his motion for a new trial. The ruling on the demurrer to the answer for want of facts is sought to be presented both by an assignment of error and as one of the causes for a new trial.

The answer of the state admitted that the raid was made by four horse thief constables without a search warrant or permission to search the real estate where the distilling apparatus was found. In substance, it averred that the distilling apparatus so seized was at that time in possession of and being operated by appellant; that the search and seizure was made by these officers on information that the defendants were then engaged in the act of making intoxicating liquor, in violation of law, and that all the acts of these four persons were executed by virtue of their authority as such constables; that no unnecessary force or means was used in effecting the arrests, or in seizing the distilling apparatus, which is being retained by the sheriff to be used as evidence at the trial of the defendants.

To distill intoxicating liquor for use in violation of law is by statute made a felony. §1, *supra*. The answer averred facts sufficient to warrant officers

1. empowered to apprehend felons engaged in the act of committing a felony in their presence, or brought to their attention by reliable information, to pursue and arrest them, and it was not error to overrule the demurrer to such answer.

We will next consider causes urged for a new trial: (1) Objections to certain evidence; (2) insufficient evidence; and (3) verdict contrary to law.

The evidence, in substance, shows that on the evening of July 26, 1923, one James M. Burns, a resident of

the city of Washington, Indiana, claiming to be a constable of the Horse Thief Detective Association, received information over the telephone that some parties were operating an illicit still near the town of Alfordsville. This man Burns, who is referred to by some of the witnesses as "Captain Burns," called to his aid three other persons of the city of Washington having the authority only of horse thief constables, and together, by means of automobiles, they proceeded to the town of Alfordsville where they met other persons from whom they received some information, but on what subject does not appear. From Alfordsville they continued on south and a little west, a distance of about three miles, when they parked their automobile on the side of the road and on foot followed a private roadway for about a quarter of a mile, and then another quarter through fields and woods to a creek bottom, and on the bank of the creek, they located this appellant and his associate seated within two feet of a ten-gallon still then in operation, wood being used as fuel to heat the still. When these raiders were about 200 feet from the location of the still, they could see the fire under it, heard the boys talking, and could smell the cooking mash. They then crawled up to within about ten feet of appellant and his associate, jumped up and "told them to throw up their hands and not to move, that they were surrounded." They threw up their hands and the raiders declared them under arrest. These horse thief constables then seized the still, its contents, some other vessels and about a quart of warm white mule whisky, which they delivered to the sheriff of Daviess county and lodged appellant in the county jail. While it does not clearly appear from the evidence, yet it may be inferred, that the still in question, when seized, was on the real estate owned, controlled and in the possession of appellant's father, and

at least one-half mile from his father's dwelling-house where appellant lived as a member of his father's family.

To all questions pertaining to what the raiders saw, said and did after they left the public highway and entered upon private premises, and especially as to all that took place after they reached the location of the still, the following objection was interposed: "The defendant objects to this question for the reason that whatever he (witness) saw or observed at that time was seen and observed through unlawful search and seizure, and in violation of the Constitution of the State of Indiana and in violation of the Constitution of the United States of America." This objection in each instance was overruled and the witness permitted to answer.

We have read carefully the unopposed recitals of the evidence furnished by appellant's brief, and also the evidence presented by the record, but in neither do we find any apparent thought of establishing a preliminary basis for the admission of the questioned evidence, or an effort to lay a foundation upon which to predicate the specific objection.

The persons who seized the property and made the arrests justify their action on the theory that they were at that time constables by virtue of their appointment, in compliance with ch. 144, §8, Acts 1907 p. 230, §6164 Burns 1926. This enactment provides the procedure only essential to the appointment of constables recommended by the association therein named. While this statute purports to confer upon such appointee "all the power of constables," yet it is silent on the question of qualifying him as such officer. That such appointee may, within ten days after his appointment, qualify under the statute applicable to constables and for the qualification of officers generally, we do not question,

but a failure so to do would have the effect of canceling his appointment. §11566 Burns 1926. This conclusion is based upon the theory that a constable is an officer required to give an official bond "within ten days after the commencement of his term of office (appointment, §8, *supra*)  *  *  *  in the manner prescribed by law, the office shall be vacant."

The official capacity in which Burns and his associates claimed to act was not questioned in the trial court  Hence, we must assume that they had complied with the law by taking the oath of office, by giving an official bond within the required time in the penalty of $1,000, payable to the State of Indiana which had been approved by the clerk of the circuit court. §§11566, 12013, 11567, 11580 Burns 1926, §§9100, 9548, 9111, 9120 Burns 1914. We express no opinion as to the power and authority of such constables.

We are only concerned with the objection offered to the proposed evidence asserted as having been obtained through an unlawful search and seizure. There 2. is really no showing justifying the four persons claiming to act as constables to make the search and seizure without first obtaining a lawfully issued search warrant covering the premises to be searched, and hence we cannot refrain from expressing our disapproval of their mode of action. However, for the purposes of this case, if it be admitted that the four constables invaded certain premises without the owner's consent, still for any wrong or trespass by them committed, they must respond to the party injured and not to some third party who is a stranger to the asserted wrong. This court has ruled that the constitutional right, "to be secure in their persons, houses, papers and effects against unreasonable search or seizure" (Art. 1, §11, Indiana Constitution), is a personal right. *Snedegar* v. *State* (1925), 196 Ind. 254, 146 N. E. 849.

In the present case, it appears that appellant was about twenty-two years old, yet there is no showing that he had possession or control of the farm on 3. which the still was found, or that he had any authority or consent of the owner of the farm to forbid persons entering thereon. Moreover, it appears from the evidence beyond the shadow of a doubt that he had no interest, possessory or otherwise, in the property seized. Upon a careful review of all the evidence at bar, we are not prepared to say that any of appellant's constitutional rights were violated. Hence, it was not error to admit the questioned evidence. *Snedegar* v. *State, supra; Earle* v. *State* (1924), 194 Ind. 165, 142 N. E. 405; *Walker* v. *State* (1924), 194 Ind. 402, 142 N. E. 16.

Lastly, it is insisted that the verdict is not sustained by sufficient evidence, and therefore contrary to law. The affidavit upon which appellant was tried, at 4. this point material, was that the persons named "did then and there unlawfully have in their *possession* and under their *control* and *use* (our italics) a certain still and distilling apparatus for the manufacture of intoxicating liquor, in violation of the law of this state." The only evidence to sustain the foregoing charge against appellant was that he was present at the time the still was in operation. As against whatever inference may be drawn from mere presence, is the testimony of appellant explaining how he came to be there, which explanation was reasonable and consistent with no purpose of wrongdoing. In addition, there was evidence on the part of the state that appellant's associate was seen on the day of his arrest and upon other days prior thereto on different public highways driving his automobile containing the still and some other utensils which might be used in connection therewith, but there is absolutely no evidence showing

or tending to show that appellant, on any of these occasions, was with him or that he was or had been an associate of such party, or that he was interested in the operation of the still other than as an onlooker; nor does the evidence connect him with the disposition of contraband liquor or prior connection in any form with implements for the manufacture thereof. Under the circumstances disclosed by the record at bar, we are not willing to say that the inference to be drawn from the mere fact of presence is sufficient evidence to justify a conviction of possession, control or use, the offense of which appellant was charged.

Judgment reversed, with instructions that the trial court sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.