**UNITED STATES v. EVERSOLE.**

**No. 10868.**

United States Court of Appeals, Seventh Circuit.

Jan. 19, 1954.

Rehearing Denied Feb. 17, 1954.

Cecil C. Tague, Sr., Brookville, Ind., Jacob H. Martin, Sydney G. Craig, Chicago, Ill., for appellant.

Jack C. Brown, U. S. Atty., Stephen Leonard and William H. Sparrenberger, Asst. U. S. Attys., Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Defendant was convicted of violating 26 U.S.C.A. § 2803(a) by having in his possession a gallon of distilled spirits in a container which did not have a stamp attached showing payment of Internal Revenue taxes.

On the basis of an alleged unreasonable search and seizure, an oral motion was made at the beginning of the trial, and renewed during the trial, to suppress Exhibit I, being the jug of distilled spirits. Each motion to suppress was denied and after a trial to the court the defendant was found guilty as charged. On this appeal the sole error urged is that the jug of distilled liquor was obtained as a result of an unreasonable search and seizure. Defendant claims that the search was indiscriminate, conducted without probable cause, and in violation of his rights under the Fourth Amendment.

Chappel Road is a country highway about three miles in length, located in Franklin County, Indiana, one end of which intersects State Highway 52, which is a heavily traveled highway. On September 2, 1951, Indiana State and County police authorities and one federal officer placed road blocks near both ends of Chappel Road. The record does not disclose who was in charge of the officers, but the idea of the road block was apparently that of Sheriff Hixon of Franklin County. It is clear that the State and federal authorities were cooperating.

Considering the evidence most favorable to the government, Sheriff Hixon had received a number of complaints of drunkenness and fighting in the Chappel Road area, and had received reports that on previous Sundays, moonshine whiskey had been taken from the area in vehicles of various kinds. It had been reported to the Sheriff that Anderson

Eversole had been seen several times in the Chappel Road area. The Sheriff knew Eversole, and that some 20 years previously he had been convicted of bootlegging. On the afternoon of Sunday, September 2, 1951, the officers who were located near the end of Chappel Road, about ¾ of a mile distant from Highway 52, stopped an Oldsmobile car, searched it, and found moonshine whiskey.

On said date defendant had been visiting at the Richmond home located on Chappel Road. Because of a disabled leg, he had requested a ride home from one Hunter, who owned a Ford pick-up truck. Hunter asked a young man, Oliver Quinlan, to drive defendant home, and Quinlan, Dewey Richmond, and defendant started to drive down Chappel Road in the truck. They had traveled only a quarter of a mile when they came to where the Oldsmobile was standing in the road. Quinlan stopped the truck, and almost immediately thereafter saw one of the officers on the road. Quinlan and Richmond got out of the truck and as they did so one of the officers saw a glass jug on the floor board of the truck, next to defendant's feet. The jug was taken from the truck, the federal officer examined it, smelled it, and identified it as moonshine whiskey. All three occupants of the truck were placed under arrest.

Defendant contends that at least eight automobiles and trucks were stopped by the officers in an indiscriminate search that was nothing more than a fishing expedition. In support of his claim that such search was unreasonable and illegal, he relies upon statements of the Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

In the Carroll case the court said, 267 U.S. at pages 153–154, 45 S.Ct. at page 285, "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and in-

dignity of such a search. * * * those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

In Brinegar, the court, after construing the Carroll case, said, 338 U.S. at pages 176–177, 69 S.Ct. at page 1311, "Both cases involve freedom to use public highways in swiftly moving vehicles for dealing in contraband, * * *. In such a case the citizen who has given no good cause for believing he is engaged in that sort of activity is entitled to proceed on his way without interference. But one who recently and repeatedly has given substantial ground for believing that he is engaging in the forbidden transportation in the area of his usual operations has no such immunity, if the officer who intercepts him in that region knows that fact at the time he makes the interception and the circumstances under which it is made are not such as to indicate the suspect is going about legitimate affairs. This does not mean, as seems to be assumed, that every traveler along the public highways may be stopped and searched at the officers' whim, caprice or mere suspicion."

An interesting viewpoint is presented in Justice Jackson's dissent in Brinegar, supra, 338 U.S. at pages 182–183, 69 S. Ct. at page 1314, were he stated he would strive hard to sustain a road block where officers were searching every car in order to apprehend a kidnapper and his child victim, but the Justice observed, "But I should not strain to sustain such a road block and universal search to salvage a few bottles of bourbon and catch a bootlegger."

The defendant also cites Jones v. United States, 10 Cir., 131 F.2d 539, at page 540, where the court said: "This constitutional provision brings within its sweep the indiscriminate stopping and searching of automobiles on the high-

768

ways on the mere chance that they contain contraband liquor."

We think the proof to support probable cause in the case at bar is much weaker than in the Carroll and Brinegar cases, supra. Here there was considerable evidence that the search was indiscriminate and that several automobiles other than the Oldsmobile and the Ford truck were searched. The line between suspicion and probable cause is often difficult to draw. Even considering only the evidence most favorable to the government, it is doubtful that in the instant case probable cause was established within the standards of Carroll v. United States, supra, and Brinegar v. United States, supra.

However, it is unnecessary to rest our decision in this case on the basis of unreasonable search and seizure, as we are convinced that the defendant is not and was not in a position to invoke the constitutional protection of the Fourth Amendment. The truck in which defendant was riding did not belong to him. It was owned by Hunter and was in the custody of Quinlan. At the trial defendant protested strongly that the jug of whiskey was not his and that he knew nothing of it until it was seized by the officers. His motion to suppress did not include a request that the property be returned to him.

■■ One who has no proprietary or possessory interests in the premises searched or the property seized is not in a position to claim that his constitutional rights have been violated by an unreasonable search and seizure. United States v. Pisano, 7 Cir., 193 F.2d 361, 365; Haywood v. United States, 7 Cir., 268 F. 795, 803–804. One who disclaims any title or interest in property which he seeks to challenge as evidence by reason of an unreasonable search and seizure deprives himself of any standing to invoke the constitutional amendment. Rossi v. United States, 7 Cir., 60 F.2d 955; Scoggins v. United States, D.C.Cir., 202 F.2d 211; Connolly v. Medalie, 2 Cir., 58 F.2d 629. Judgment affirmed.