FLETCHER CARTWRIGHT *v.* STATE OF INDIANA.

[No. 2-872A43. Filed December 5, 1972. Rehearing denied January 16, 1973.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—This is an appeal by defendant-appellant, Fletcher Cartwright, (Cartwright), from a court trial convic-

tion of Possession of Heroin in violation of Ind. Ann. Stat. § 10-3520 (Burns 1972 Supp.). We affirm.

## FACTS

The facts and evidence most favorable to the State and the judgment are:

On the evening of September 21, 1971, Officer Ernest Miller (Officer Miller) and Officer J. C. Crawford (Officer Crawford) of the Indianapolis Police Department were patrolling the near Northwest side of Indianapolis, Indiana in their squad car. At approximately 7:45 P.M., the Officers observed Cartwright and two other individuals standing near the intersection of 27th Street and Northwestern Avenue. As they had information that Cartwright had been dealing in narcotics, both Officers approached Cartwright, identified themselves as police officers, and asked Cartwright for identification. Pursuant to this request, Cartwright reached into his back pocket to get his wallet as if he were about to identify himself. Instead of handing the wallet to one of the officers, however, Cartwright threw it to the ground and began to run. Officer Miller pursued him and captured him within a distance of approximately one-half block. Cartwright was then placed under arrest for fleeing a police officer.

During the time Cartwright was attempting to escape, Officer Crawford remainded at the location where Cartwright abandoned the wallet. Officer Crawford stated that when Cartwright threw the wallet to the ground, he saw a brown envelope protruding from the inside of the wallet. He picked up the wallet, removed the brown envelope, opened it, and found that it contained ten tinfoil packets of a white powdery substance. The wallet also contained various identification and personal papers belonging to Cartwright.

Meanwhile, Officer Miller returned with Cartwright to the location where the Officers had approached Cartwright. In the presence of Cartwright and Officer Miller, Officer Craw-

ford conducted a preliminary field test, which disclosed that the white powdery substance in each of the tinfoil packets was heroin. Cartwright was then additionally charged with Illegal Possession of Narcotics in violation of Ind. Ann. Stat. § 10-3520, *supra*.

Cartwright and the brown envelope containing the ten tinfoil packets were then taken to the Indianapolis Police Department Headquarters. While at the Police Department, Officer Crawford wrote Cartwright's name and address on the envelope and then he and Officer Miller initialed it. Officer Crawford then placed this brown envelope inside of another envelope, which he sealed with a stapler, and deposited in a "drop box" in the Indianapolis Police Department Property Room. Officer Crawford later submitted a request for a laboratory analysis of the contents of the envelope.

In compliance with Officer Crawford's request for a laboratory analysis, on October 26, 1971, Carl Phillips (Phillips), a forensic chemist for the Indianapolis Police Deparment, obtained the brown envelope from the "Property Room" of the Indianapolis Police Department. Phillips analyzed the contents of the brown envelope and found that the substance contained therein was heroin. Following his analysis, Phillips placed the heroin in a plastic bag which he marked. He then placed the plastic bag in the brown envelope which was found in Cartwright's wallet, marked the brown envelope, and placed it inside the larger envelope used by Officer Crawford for the original deposit in the "drop box." Phillips additionally marked the outside envelope, sealed it, and returned it to the "Property Room."

On March 3, 1972, the day of Cartwright's. trial, Officer Miller retrieved the envelope from the "Narcotics Vault" in the Property Room of the Indianapolis Police Department and gave the envelope to Officer Crawford, who brought it to court. When introduced into evidence, Officer Crawford positively identified the inside brown envelope and its contents as the same envelope he found in the wallet Cart-

wright threw to the ground. Officer Crawford also identified the outside envelope as the one he used to deposit the brown envelope and the heroin in the "drop box" located in the Property Room of the Indianapolis Police Department. In addition, Phillips identified the package and its contents as the same package upon which he conducted a chemical analysis. Both Phillips and Officer Crawford testified that the package was in the same condition as when they last had occasion to deal with it.

Cartwright was charged by Affidavit with violation of Ind. Ann. Stat. § 10-3520, *supra*, in that he "* * * did then and there unlawfully and feloniously have in his possession and under his control a narcotic drug, to-wit: HEROIN, * * *." In a trial before the court without a jury, Cartwright was found guilty as charged and sentenced from two to ten years in prison and fined $500.00.

## ISSUES

ISSUE ONE.     Was the evidence sufficient to prove that Cartwright had heroin in his possession and under his control?

ISSUE TWO.     Was the State required to show that Cartwright was not authorized by law to have possession of heroin?

ISSUE THREE.   Was a sufficient chain of custody over the brown envelope established to warrant its admission into evidence?

As to ISSUE ONE, Cartwright contends that the State failed to prove beyond a reasonable doubt that he was in possession of heroin. The State, on the other hand, asserts that the evidence was sufficient to show that Cartwright was in possession of heroin since Cartwright was observed to have thrown a wallet to the ground which contained heroin.

As to ISSUE TWO, Cartwright argues that the State failed to submit any evidence to show that he was not au-

thorized by any law of the United States or of the State of Indiana to have possession or control of heroin. In reply, the State asserts that it was not required to prove lack of authorization. Rather, the burden is on the defendant to show that he was authorized to possess the narcotics.

As to ISSUE THREE, Cartwright contends that there was an insufficient chain of custody over the brown envelope to warrant its admission into evidence, for the reason that there was a gap of some five months (September to March) between the time the package was placed in the drop box at the Police Department and the time it was offered in evidence.

The State's response is that there was no evidence of any tampering with, or alteration of, the brown envelope from the time it was taken to the Police Department on September 21, 1971 until it was presented for admission into evidence at trial on March 3, 1972.

## DECISION

ISSUE ONE—It is our opinion that the evidence was sufficient to show that Cartwright had heroin in his possession and under his control.

When reviewing an allegation of insufficiency of the evidence, this court will not weigh the evidence nor resolve questions of credibility of witnesses. We will look only to that evidence, and the reasonable inferences therefrom, which support the finding of the trial court. *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89; *Spright* v. *State* (1970), 254 Ind. 420, 260 N.E.2d 770. A conviction will be affirmed if there is evidence of probative value from which the trier of facts could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N.E.2d 558.

Cartwright contends that the evidence presented by the State failed to show that he had possession of heroin.

In *Patterson* v. *State* (1970), 255 Ind. 22, 262 N.E.2d 520, the facts were very similar to the case before us. The evidence in *Patterson* revealed that four policemen stopped their squad car behind the defendant's automobile and, as the defendant emerged and attempted to escape, at least three of the four officers saw the defendant throw currency and aluminum foil packages to the ground. Two of the officers retrieved the aluminum foil packages, which were eventually established to contain heroin. In determining that this evidence was sufficient to show possession, Justice DeBruler of our Supreme Court said:

> "Appellant alleges that evidence is insufficient to show that he ever had possession of the alleged drugs. This allegation is without merit. Three of the officers on the scene testified that they personally observed the appellant throw the aluminum packages to the ground as he ran thru the yard. Such evidence is sufficient to warrant the finding of the trial court that the appellant did have possession of the alleged drugs."

In the case before us, both Officers Miller and Crawford personally observed Cartwright remove a wallet from his back pocket and throw it to the ground. Officer Crawford retrieved the wallet, opened the brown envelope protruding from inside the wallet, and discovered ten tinfoil packets of a white powdery substance, which was later established to be heroin. In addition to this brown envelope, the wallet also contained various identification and personal papers belonging to Cartwright. Based on these facts and *Patterson* v. *State, supra,* we feel that the evidence was more than sufficient to warrant a finding that Cartwright did have possession of heroin.

ISSUE TWO—It is our opinion that it was not incumbent upon the State to prove that Cartwright was not authorized by law to have possession of narcotic drugs.

This precise question was answered in *Stanley* v. *State* (1969), 252 Ind. 37, 245 N.E.2d 149, and was recently treated

by this court in *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772, wherein we quoted this language from *Stanley* as being dispositive of this issue:

> "It is, therefore, not incumbent upon the State in a prosecution for the unlawful possesion of narcotics to prove all possible exceptions or to by affirmative evidence negate every conceivable hypothesis by which the appellant might have gained his possession lawfully."

See also: *Day* v. *State* (1968), 251 Ind. 399, 241 N.E.2d 357; *Jalbert* v. *State* (1928), 200 Ind. 380, 165 N.E. 522.

ISSUE THREE—It is our opinion that a sufficient chain of custody over the brown envelope was established so as to warrant its admission into evidence.

In *Butler* v. *State, supra,* decided simultaneously with this case, we extensively examined recent Indiana authority treating the chain of custody rule. To repeat here that analysis of ruling Indiana case law would only serve to needlessly enrich the printing industry.

Certain limited comments and comparisons are in order, however.

On the authority of *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, and *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541, we held in *Butler* that although the State is not required to establish an absolutely perfect chain of custody, the evidence must establish a complete chain and strongly suggest the exact whereabouts of the exhibit at all times.

Like *Butler,* the evidence concerning chain of custody in the case before us presents a complete chain. The evidence strongly suggests the exact whereabouts of the brown envelope at all times, resulting in reasonable assurance that the brown envelope passed through the entire chain of custody in an undisturbed condition.

This conclusion is supported by these facts.

Immediately after Cartwright's arrest, Officer Crawford testified that Cartwright and the brown envelope containing the tinfoil packets were taken to the Police Department Headquarters, where he and Officer Miller wrote Cartwright's name and address on the brown envelope and initialed it. The brown envelope was then placed by Officer Crawford inside a larger envelope, which he sealed with a stapler and deposited in the "drop box" located in the Property Room of the Police Department. So the brown envelope was carefully marked and identified.

On October 26, 1971, approximately one month after Cartwright's arrest, the brown envelope was removed from the Property Room and delivered to Phillips for chemical analysis. Nothing in the record indicates where in the Property Room the brown envelope was removed from or who delivered the envelope to Phillips. However, Phillips's direct and unconditional testimony established that the brown envelope was in fact taken from the Property Room and delivered directly to him in the Police Department Laboratory. There was nothing to contradict this testimony and no indication by the evidence of any opportunity for tampering.

After receipt of the brown envelope, Phillips conducted a routine chemical analysis on its contents, the results of which disclosed the substance to be heroin. He then placed the heroin in a plastic bag which he marked, placed the plastic bag in the brown envelope and marked the brown envelope, and then placed the brown envelope in the larger envelope used by Officer Crawford for the original deposit in the drop box. Phillips additionally marked the outside envelope, sealed it, and returned it to the Property Room. Again, there was no disclosure as to where in the Property Room the brown envelope was returned to, or who it was that returned it. Nevertheless, Phillips's unqualified testimony established that the brown envelope was in fact returned to the Property Room.

Thereafter, on March 3, 1972 Officer Miller retrieved the

envelope from the Narcotics Vault in the Property Room of the Police Department and gave it to Officer Crawford, who brought it to court for Cartwright's trial.

When introduced into evidence, both Phillips and Officer Crawford positively identified the brown envelope, its contents, and the outside envelope as the materials they had occasion to deal with in connection with Cartwright's case. In addition, both men stated that the envelopes and their contents were in the same condition as when they last had occasion to deal with them. The effect of this identification testimony by Phillips and Officer Crawford was to establish a reasonable assurance that the brown envelope traveled through the entire chain of custody in an undisturbed condition.

As in *Butler* v. *State, supra,* the evidence before us indicates a continuous movement of the brown envelope through the entire chain of possession. The direct and uncontroverted testimony by Phillips and Officer Crawford established that the brown envelope was located in the Property Room at all times. The weakness in the chain is that the brown envelope was deposited in the "drop box" in the Property Room, withdrawn from the Property Room for analysis, returned there, and removed from there for trial out of the "Narcotics Vault." The strength of the evidence is that in each instance removal or return of the brown envelope was *from the Property Room.* Greater specificity is not required.

In *Kolb* v. *State, supra,* the only evidence presented as to the safekeeping of a confiscated bag of marijuana was that it was retained in the State Police Department Property Room. There was nothing to indicate exactly where in the Property Room the marijuana was kept.

Also not disclosed in *Kolb* was the identity of the person who delivered the exhibit to the Laboratory and returned it from the Laboratory to the Property Room after the Laboratory analysis. Again, this lack of specificity was not deemed by our Supreme Court to create a break in the chain of custody.

We might add that the case before us, and apparently *not* in *Kolb,* the identity of the chemist and the exact date that he conducted his analysis was established.

In concluding that the evidence before us was sufficient to establish a chain of custody over the brown envelope so that its admission into evidence was not error, we quote this passage from our opinion in *Butler:*

> "As we read *Graham, Guthrie,* and *Kolb,* the test is not one of perfection of proof. The chain of 'possession' is proven if it be demonstrated that there is no reasonable doubt as to the 'continuous whereabouts' of the property (narcotics) and that it has remained in an 'undisturbed condition.' "

Cartwright's conviction is therefore affirmed.

Sullivan, J., concurs; White, J., dissents with opinion.

### DISSENTING OPINION

WHITE, J.—For the reasons stated in my dissenting statement in *Butler* v. *State* (1972), 154 Ind. 361, 289 N.E.2d 772, I must also dissent here. While the majority opinion glosses over the hiatus from the property room to the chemist whose testimony was crucial, it does acknowledge want of evidence as to who delivered the envelope to him.

If the crime with which defendant was charged had been possession of a brown envelope there would be no question, but as Mr. Justice Hunter said in the leading heroin chain-of-custody case, "The fact that the chewing gum wrapper [in which the "buy" in that case was wrapped] was identifiable as that acquired from appellant at the drugstore cannot cure the defective evidentiary chain of custody which preceded the laboratory experiments." *Graham* v. *State* (1970), 253 Ind. 525, 532, 255 N.E.2d 652, 655, 20 Ind. Dec. 343, 348.

NOTE.—Reported at 289 N.E.2d 763.