ADD BUTLER, JR. *v.* STATE OF INDIANA.

[No. 2-672A16. Filed December 5, 1972. Rehearing denied January 4, 1973. Transfer denied May 2, 1973.]

*David F. McNamar, Steers, Klee, Sullivan & Lemay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General.

### CASE SUMMARY

BUCHANAN, P.J.—Defendant-appellant, Add Butler, Jr. (Butler), appeals from a court trial conviction of possession of heroin pursuant to Ind. Ann. Stat. § 10-3520 (Burns Supp. 1972). We affirm.

FACTS—The facts and evidence most favorable to the State and the judgment below are:

At approximately 10:00 P.M. on July 21, 1971, Butler and three other men were standing near an unoccupied open convertible parked in the service area of a gasoline service station located on the corner of North and West Streets in Indianapolis. The open convertible was owned by one of the three men conversing with Butler.

While on a routine patrol, Officers James Brenton (Officer Brenton) and Carl Robertson (Officer Robertson) of the Indianapolis Police Department observed Butler and the three men standing outside of the service station and approached the three men. Upon seeing the officers, Butler moved toward the open convertible and dropped a cellophane package into the back seat. Butler then walked inside the service station while two of the other three men got into the car.

Officer Robertson, without a search warrant, and before making any arrests or searching any of the four men, approached the car, opened the door and retrieved the cellophane package from the rear floorboard of the car. Officer Brenton testified that the package retrieved by Officer Robertson was the same package discarded by Butler. Officer Robertson then gave the package to Officer Brenton, who examined it and found it to contain three tinfoil packets, each filled with a white powdery substance. After Officer Brenton conducted a Marquis Reagent Test (a preliminary field examination to determine the presence of an opiate derivative drug), Butler and the other two men were searched and arrested.

The three tinfoil packets and their contents were returned to the cellophane package, which was in turn placed by Officer Brenton in a yellow envelope. Officer Brenton then marked the outside of the envelope for identification and proceeded to Police Headquarters, where at 11:25 P.M. of the same night, the yellow envelope was deposited in the Narcotics Vault in the Property Room located in the basement of Indianapolis Police Headquarters.

On October 22, 1971, the yellow envelope was taken from the Narcotics Vault in the Property Room and delivered to the Police Laboratory, where Carl Phillips (Phillips), a forensic chemist for the Indianapolis Police Department, examined the contents. After conducting routine tests, the results of which disclosed that the substance was heroin, Phillips sealed the tinfoil packets and cellophane package in

a plastic bag, placed it in the yellow envelope which he marked and sent back to the Narcotics Vault in the Property Room.

At the trial on February 10, 1972, the yellow envelope and its contents were produced and became State's Exhibit Number 1 (hereinafter referred to as the "cellophane package") after being identified by Officer Brenton and Phillips as the same package they had occasion to deal with in connection with Butler's arrest.

Butler was found guilty by the court and sentenced to the Department of Correction for not less than two nor more than ten years.

### ISSUES

ISSUE ONE.     Did Officer Robertson's warrantless search of the open convertible constitute an illegal search and seizure, thereby requiring the suppression of the cellophane package obtained from that search and seizure?

ISSUE TWO.     Was a sufficient chain of custody over the cellophane package established to warrant admission of the cellophane package into evidence?

ISSUE THREE.     Was the evidence presented sufficient to establish Butler's guilt beyond a reasonable doubt?

As to ISSUE ONE, Butler says the search of the open convertible was illegal because there was no probable cause to believe a felony had been committed.

In response, the State points to Butler's suspicious actions as sufficient to establish probable cause, thus making the search valid.

As to ISSUE TWO, Butler asserts that there was a break in the chain of custody of the cellophane package because

Officer Brenton placed the cellophane package in the "Narcotic Lockbox" on July 21, 1971, and some three months later, Phillips removed it from the "Property Room."

The State's response is that there was no evidence of any tampering with or alteration of the cellophane package from the time it was taken to the Narcotics Vault of the Property Room on July 21, 1971, until it was presented for admission into evidence at trial on February 10, 1972.

As to ISSUE THREE, Butler contends that the evidence presented by the State was insufficient to sustain his conviction because there was a reasonable doubt as to whether the cellophane package retrieved by Officer Robertson was the same cellophane package Butler purportedly threw into the back seat of the automobile. Furthermore, Butler asserts that there was no evidence introduced proving that he was not one of the class of persons authorized by law to possess drugs.

The evidence conclusively proved, the State says, that the cellophane package discarded by Butler was the same package retrieved by Officer Robertson and furthermore there is no requirement of proof that Butler was not one of the class of persons authorized to possess or control narcotic drugs.

## DECISION

ISSUE ONE—It is our opinion that the search of the automobile by Officer Robertson did not constitute an illegal search and seizure.

We are aware of the general rule requiring exigent circumstances and the existence of probable cause to justify a warrantless search and seizure. *Coolidge* v. *New Hampshire* (1971), 91 S.Ct. 2022; *Stuck* v. *State* (1970), 255 Ind. 350, 264 N.E.2d 611; *Manson* v. *State* (1967), 249 Ind. 53, 229 N.E.2d 801.

Because of the automobile's mobility a search may be thwarted if delayed. Relaxation of the requirement of a warrant is permissible in certain circumstances. *United States*

v. *Zemke* (7th Cir. 1972), 457 F. 2d 110; *Idol* v. *State* (1954), 233 Ind. 307, 119 N.E.2d 428.

But more important to this appeal is who may wrap himself in the mantle of constitutional security against unreasonable searches and seizures. The right is personal. Violation of a third party's unconstitutional rights cannot be claimed by an accused as grounds for suppression of evidence sought to be introduced against him. *Kirkland* v. *State* (1968), 249 Ind. 305, 232 N.E.2d 365; *Greer* v. *State* (1970), 253 Ind. 609, 255 N.E.2d 919; *United States* v. *Eversole* (7th Cir. 1954), 209 F.2d 766.

Objection to an illegal search and seizure of a third party's property which the defendant does not own, or have the right to possess, is of no avail. *Kirkland* v. *State, supra; Lindsey* v. *State* (1965), 246 Ind. 431, 204 N.E.2d 357; *Minton* v. *State* (1966), 247 Ind. 307, 214 N.E.2d 380; *Britt* v. *State* (1962), 242 Ind. 548, 180 N.E. 2d 235; *Adler* v. *State* (1967), 248 Ind. 193, 225 N.E.2d 171; *Wilson* v. *State* (1966), 247 Ind. 454, 217 N.E.2d 147.

In *Kirkland* v. *State, supra,* the defendant was arrested for robbery while riding with a co-defendant in the co-defendant's automobile. After the arrest, the police searched the co-defendant's automobile and discovered the money obtained from the robbery. In affirming a denial of the defendant's motion to suppress the evidence obtained from the search of the co-defendant's automobile, Chief Justice Arterburn emphasized the personal nature of the right against unreasonable searches and seizures:

"* * * Under the circumstances, the appellant has *no legal right to complain of the search of an automobile which was not in his possession* at the time. "*Constitutional rights are personal to an individual,* and violation of a third party's constitutional rights cannot be claimed by a defendant in a trial. It is well settled that *a search of a third party's property or home, even if without probable cause, cannot be made the basis of* a claim by a defendant for the *exclusion of*

such evidence. *Adler* v. *State* (1967), 248 Ind. 193, 225 N.E.2d 171; *Wilson* v. *State* (1966), 247 Ind. 454, 217 N.E. 2d 147; *Williams* v. *State* (1929), 201 Ind. 175, 166 N.E. 663; *Speybroeck* v. *State* (1926), 198 Ind. 683, 154 N.E. 1; *Frye* v. *State* (1926), 197 Ind. 615, 151 N.E. 728; *Earle* v. *State* (1924), 194 Ind. 165, 142 N.E. 405; *Walker* v. *State* (1924), 194 Ind. 402, 142 N.E. 16." (Emphasis supplied.)

The conclusive evidence is that the open convertible searched by Officer Robertson was not owned by Butler, nor does the record indicate that he was in control of or had a right to possess the automobile. The only evidence to connect Butler with the open convertible is that he was stading near it in the service station area with two other men, one of whom was the owner. This is hardly sufficient to warrant the inference that Butler was in possession of or had the right of possession of the convertible.

From the authority cited above the conclusion is inevitable that even though Butler may have ridden in another man's automobile, he may not vicariously draw on the owner's constitutional privilege against unreasonable search and seizure.

Therefore, the cellophane package and its contents were properly admitted into evidence.

ISSUE TWO—It is our opinion that a chain of custody over the cellophane package was established so as to warrant admission of the package into evidence.

In recent years the chain of custody rule has been the subject of judicial interest. Its purpose is to establish a complete chain of possession from the original receiver to the final custodian in order to lay a proper foundation connecting the evidence in question with the accused. Justice Hunter in *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, aptly stated the rule to be:

"* * * *where as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution,*

*tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics.* Where such evidence or testimony is improperly introduced and is prejudicial to the party against whom it is directed, then the judgment of the trial court should be reversed." (Emphasis by the court.)

See also: *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N.E.2d 579; *McMinoway* v. *State* (1972), 283 N.E.2d 553; *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541.

While a complete chain of custody must be established as described in *Graham, supra,* the State is not required to exclude every remote *possibility* of tampering. Evidence which strongly suggests the exact whereabouts of the exhibit at all times will often be sufficient for chain of custody purposes. This was acknowledged in *Guthrie* v. *State, supra,* where, again, Justice Hunter said:

"* * * However, *where* as here, the state has introduced *evidence* which *strongly suggests the exact whereabouts of the evidence, the issue becomes one of probabilities.*

"Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. See People v. Riser (1956), 47 Cal.2d 566, 305 P. 2d 1; Breeding v. State (1959), 220 Md. 193, 151 A.2d 743; State v. Baines (Mo. 1965), 394 S.W.2d 312; Commonwealth v. White (1967), 353 Mass. 409, 232 N.E. 2d 335. We believe such a rule is well grounded in logic and reason." (Emphasis supplied.)

As a result, "[a] mere possibility that the evidence could have been tampered with will not make it totally objectionable." *Kolb* v. *State, supra.*

Our examination of the record indicates no break in the chain of possession from July 21, 1971, the day of Butler's arrest, to the time the cellophane package was introduced into evidence at trial.

The direct, uncontroverted testimony of Officer Brenton revealed that at 11:25 P.M. on the night of Butler's arrest

(July 21, 1971), the cellophane package was placed in the "Narcotic Vault" in the Property Room in the basement of Police Headquarters. While Officer Brenton failed to disclose precisely who put the cellophane package in the Narcotics Vault, he did unequivocally state that it was placed there at 11:25 P.M. on July 21, 1971. Officer Brenton testified:

"Q. I hand you what's been marked for purposes of identification, 'State's Exhibit 1', and ask you to identify the exhibit and the contents thereof?

A. This is a yellow envelope with my initials, and the date, and my writing. This is three tinfoil packets of suspected Heroin and in a cellophane package.

\* \* \*

Q. Would you identify it, Officer?

A. This is the package that I sent in to the Narcotics Vault—the Narcotic Lockbox.

\* \* \*

Q. Alright, is this the same brown—are the contents of this envelope the packets that you retrieved from the Defendant?

A. Yes, they are.

Q. Alright, what did you do with the envelopes—the packets after you performed your Marquis Reagents Test on it?

A. *I put them into this envelope, went to police headquarters, and at eleven-twenty-five (11:25) P.M. they were put into the Narcotic Lockbox,* in the basement of headquarters." (Emphasis supplied.)

The testimony and evidence was also uncontroverted that the Narcotic Lockbox referred to by Officer Brenton was the same as the Narcotic Vault located in the Property Room in the basement of the Indianapolis Police Headquarters. Officer Brenton himself used the terms "Narcotic Vault" and "Narcotic Lockbox" interchangeably during the trial when he said:

"This is the package that I sent in to the Narcotic Vault—the Narcotic Lockbox."

Furthermore, it was specifically shown by the testimony of Phillips that the Narcotic Vault is located in the Property Room:

"Q. Alright, and where is it [the cellophane package] kept in the property room?
A. In the Narcotics Vault."

On October 22, 1971, the cellophane package was taken from the Narcotics Vault in the Property Room, where Officer Brenton said that it was originally deposited, and delivered to the Indianapolis Police Department Laboratory, where Phillips conducted a chemical analysis of its contents. An examination of the unqualified and uncontroverted testimony of Phillips reveals that there was no break in the chain of possession from the time it was taken from the Narcotics Vault, delivered to Phillips for analysis, and returned to the Narcotics Vault. With respect to his possession of the cellophane package, Phillips testified:

"Q. Alright, directing your attention to what's been marked as 'State's Exhibit 1', I'll ask you now to examine it, and ask you if you've ever seen 'State's Exhibit 1' prior to this date?
A. Yes, I have.
Q. And when and where?
A. It was taken from the Property Room on October 22nd, 1971, and brought to the laboratory, where I examined it.
* * *
Q. After you examination then, what did you do with 'State's Exhibit No. 1'?
A. After I finished the analysis, I sealed it in this plastic bag, returned it to the envelope, with by markings on it, and it was taken back to the property room.
Q. Alright, and where is it kept in the property room?
A. In the Narcotics Vault.
Q. Vault?
A. Yes."

Like Officer Brenton, Phillips also failed to disclose who delivered the cellophane package to him for analysis and who returned it to the Narcotics Vault after his analysis. Nevertheless, he did affirmatively state, without reservation, that on October 22, 1971 the cellophane package was removed from the Narcotics Vault, where it was originally placed, brought to him for analysis, and returned on the same day to the Narcotics Vault.

Butler's only claim of a break in the chain is that the cellophane package was placed in the "Narcotic Lockbox" by Officer Brenton and was removed by Phillips, who took it from the "Property Room." His question is how it got from the "Lockbox" to the "Property Room." The excerpt from the record quoted above unquestionably confirmed that the Narcotic(s) Lockbox, or Narcotics Vault, was located *in* the Property Room in the basement in Indianapolis Police Headquarters.

In *Kolb* v. *State, supra,* the most recent "chain of custody" pronouncement by our Supreme Court, the foundation laying evidence is not as complete or strong as in the case before us. In *Kolb*, the defendant was charged with possession of marijuana. The evidence revealed that on September 17, 1970 an Officer Van Meter of the Princeton, Indiana Police Department seized from the recipient minor a bag of substance believed to be marijuana. No identification marks were placed on the bag by Officer Van Meter (unlike our cellophane package). The bag was then delivered to an Officer Jackson, who in turn delivered it to an Officer Bennett, who finally placed it in his locker at the Princeton Police Department. The bag remained in Officer Bennett's locker until October 22, 1970, when it was placed in a matchbox, wrapped in paper and sent to the Indiana State Police Laboratory in Indianapolis. The bag in the matchbox did not arrive in Indianapolis until the next day, October 23, 1970. There is no indication of how the bag was sent to Indianapolis from Princeton, or who, if anyone, delivered it. The disposition of the bag and its placement for

safekeeping is not apparent on the face of the court's opinion. The bag and its contents were eventually analyzed by an undisclosed person in the State Police Laboratory at an unknown date. After this analysis, the bag was then placed in the Property Room of the State Police Headquarters until the time of trial. However, there was no indication as to where in the Property Room it was finally placed. The evidence confirmed that other persons had access to the bag during the time it was in the Laboratory and the Property Room.

Despite the lack of identification marks on the bag and its accessibility to other persons while in the State Police Laboratory and Property Room, our Supreme Court unanimously agreed that there was no break in the chain of custody, saying in an opinion written by Chief Justice Arterburn:

"A mere possibility that the evidence could have been tampered with will not make it totally objectionable."

The evidence presented in the case before us is more specific than that which established the admissibility of the exhibit in *Kolb*. Officer Brenton and Phillips both placed identification marks on the outside of the yellow envelope containing the cellophane package and positively identified the cellophane package at the trial. Also, the evidence in *Kolb*, like the evidence before us, failed to disclose the name of the person or persons who delivered the exhibit to the Laboratory for analysis, or who returned the exhibit after the analysis was conducted.

Butler's reliance on *Graham* v. *State, supra,* to support his contention that there was a break in the chain of custody over the cellophane package is misplaced. In that case the chain of custody over a package of narcotics was severed because the package was removed from the Police Department Property Room *by an Officer Elmore* and returned six days later by *an Officer Sullivan*. The whereabouts of the package during this six-day period was never explained.

Neither Officer Elmore nor Officer Sullivan testified at the trial. There was simply no evidence of any kind in *Graham* which shed light on the disposition of the property during the six-day period in question. Apparently the Police Property Room records were introduced into evidence in *Graham* to establish a "chain of evidence," which the court indicated could be accomplished "by either producing police custody records * * * or *by testimony of witnesses.*" (Emphasis supplied.)

While the evidence before us is far from complete as to the custodial procedures in the Property Room of the Indianapolis Police Department, the cellophane package was put *in a Narcotics Lockbox* or Vault *in the Property Room in the Indianapolis Police Department.* This was also true in *Graham.* In *Kolb,* the narcotic in question was in lockers of State Troopers and passed through the United States mail. In *Guthrie,* the exhibit remained all night on the desk of a State Trooper Sergeant.

As we read *Graham, Guthrie,* and *Kolb,* the test is not one of perfection of proof. The chain of "possession" is proven if it be demonstrated that there is no reasonable doubt as to the "continuous whereabouts" of the property (narcotics) and that it has remained in an "undisturbed condition."

To so state is not to imply that the name of the person in whose hands the property has passed must necessarily testify as to same, or that in every instance the property must be marked. These are only two factors which may combine with other facts and circumstances to produce an acceptable chain of evidence.

While the proof before us is less than ideal, we can find no missing link in the chain of possession of the narcotic in question nor any evidence or inference of tampering, loss, or mistake with respect to the cellophane package. It was continuously accounted for by positive evidence with reasonable assurance that it arrived in court in an undisturbed condition.

The State did, then, establish a sufficient chain of custody over the cellophane package to warrant its admission into evidence.

ISSUE THREE—It is our opinion that the evidence was sufficient to establish Butler's guilt beyond a reasonable doubt.

Butler's assertion is that the State failed to show that the package retrieved by Officer Robertson was the same package discarded by Butler. However, Officer Brenton's testimony was that the package retrieved was the same package discarded by Butler. On re-cross examination he testified:

"Q. Do you know whether Mr. Robertson got the same package, that you saw dropped into the car?
A. He told me he did.
Q. Oh, yeah, he told you he did. Did you know whether he did?
A. No, you'd have to ask Mr. Robertson.
Q. I'm asking you. Do you know of your own knowledge that that was the same package?
A. Yes."

He had previously testified he saw Butler drop the cellophane package in the open convertible.

We need not repeat the standard appellate review proposition about weighing evidence, credibility of witnesses, etc. to conclude that there was evidence of probative value from which the trier of facts could reasonably infer that the defendant was guilty beyond a reasonable doubt.

Butler also complains that the evidence was not sufficient to sustain his conviction for the reason that the State failed to show that he was not one of the class of persons not authorized by law to have possession of narcotic drugs. Butler's double negative has been answered many times by our Supreme Court, most recently in *Stanley* v. *State* (1969), 252 Ind. 37, 245 N.E.2d 149, by Justice Givan:

"Appellant further claims the State did not prove that the appellant was not authorized by any law of the United

States to have morphine and dilaudid in his possession or under his control, and that there is a total lack of evidence of such lack of authorization. This same general question has been raised many times in criminal prosecutions where the alleged crime is the doing of a thing or the possessing of a thing which under certain circumstances may be lawful, but which is alleged in the particular case to be unlawful. This Court has previously stated that when an offense is created by statute and the same or other statutes make exceptions thereto it is not necessary for the State to negate the exceptions by stating and proving that the defendant does not come within the same. *It is*, therefore, *not incumbent upon the State in a prosecution for the unlawful possession of narcotics to prove all possible exceptions or to by affirmative evidence negate every conceivable hypothesis by which the appellant might have gained his possession lawfully.* See *Day* v. *State* (1968), 251 Ind. 399, 241 N.E.2d 357, 359." (Emphasis supplied.)

See also: *Jalbert* v. *State* (1928), 200 Ind. 380, 165 N.E. 522.

Butler's conviction is therefore affirmed.

Sullivan, J., concurs with opinion; White, J., dissents with opinion.

### CONCURRING OPINION

SULLIVAN, J.—I concur in the result reached in the opinion by Presiding Judge Buchanan and in his treatment of Issues Two and Three. I cannot, however, agree with his framing of Issue One nor in the treatment accorded that "Issue". The primary opinion states Issue One to be:

"Did Officer Robertson's warrantless search of the open convertible constitute an illegal search and seizure, thereby requiring suppression of the cellophane package obtained from that search and seizure?"

Quite concisely I do not view the case before us as a "search" case at all. Consequently, in my opinion it does not involve "probable cause for a search", nor does it involve whether the Privilege against unlawful search is personal to the owner or possessor of the premises or property searched.

The evidence of record in the matter before us quite clearly shows that the convertible was *open,* and that the cellophane packet was dropped "into the back seat". The officer retrieved it from the rear floor board of the automobile.

Thus, notwithstanding that the State mistakes the nature of the facts and argues the issue as a "justified search", the law relative to "search" is simply not applicable. It is not a "search" case. Rather, the "plain view" doctrine is applicable and such latter doctrine is the justification for the seizure of the packet in question. *Alcorn* v. *State* (1970), 255 Ind. 491, 265 N.E.2d 413; *Ford* v. *State* (1971), 257 Ind. 498, 275 N.E.2d 808; *Deering* v. *State* (1972), 152 Ind. App. 650, 284 N.E.2d 553.

## DISSENTING OPINION

WHITE, J.—Time does not permit the detailed analysis of the testimony which would demonstrate the State's failure to prove an unbroken chain of custody. The majority opinion does accurately summarize the evidence, however, and the careful reader can see for himself that the standards of proof established in *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E. 2d 652, 20 Ind. Dec. 343, have not been met. The conviction should be reversed and the cause remanded for a new trial.

NOTE.—Reported at 289 N.E.2d 772.